UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAKOTA LABS INC.,

          Plaintiff,

vs.

HURON CAPITAL PARTNERS LLC
and MICHAEL GRUNZA III,

          Defendants.

Case No. 2:24-cv-10922
Hon. Susan K. DeClercq

_____/

## DEFENDANTS' MOTION TO DISMISS
## PLAINTIFF DAKOTA LABS INC.'S COMPLAINT UNDER
## FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) AND 9(b)

Defendants Huron Capital Partners LLC ("Huron LLC") and Michael Grunza III ("Mr. Grunza," and together with Huron LLC, the "Defendants"), by their undersigned legal counsel, move to dismiss Plaintiff Dakota Labs Inc.'s ("Plaintiff") Complaint under Federal Rules of Civil Procedure 12(b)(6) and 9(b) for the reasons set forth in the accompanying Brief in support.

Pursuant to Local Rule 7.1(a), undersigned counsel conferred with counsel for Plaintiff regarding the nature of this Motion and its legal basis and requested, but did not obtain, concurrence in the relief sought.

**WHEREFORE,** Defendants respectfully request that this Court: (a) grant Defendants' Motion to Dismiss in full; (b) dismiss all claims brought by Plaintiff against Defendants with prejudice; and (c) grant Defendants such further relief as

the Court deems just and appropriate.

Dated: June 5, 2024

Respectfully submitted,

HONIGMAN LLP

By:  /s/ Nick Gorga
    Nick Gorga (P72297)
    Shannon C. Duggan (P83211)
    Jalen R. Farmer (P86859)
660 Woodward Avenue
2290 First National Building
Detroit, MI 48226
(313) 465-7402
ngorga@honigman.com
sduggan@honigman.com
jfarmer@honigman.com

*Attorneys for Defendants Huron Capital Partners LLC and Michael Grunza III*

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAKOTA LABS INC.,

        Plaintiff,

vs.

                                   Case No. 2:24-cv-10922
                                   Hon. Susan K. DeClercq

HURON CAPITAL PARTNERS LLC
and MICHAEL GRUNZA III,

                Defendants.

_____/

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS
PLAINTIFF DAKOTA LABS INC.'S COMPLAINT UNDER
<u>FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) AND 9(b)</u>**

## TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED...................................................................v

CONTROLLING AND/OR MOST APPROPRAITE AUTHORITY ....................vi

I.     INTRODUCTION ........................................................................................1

II.    FACTUAL BACKGROUND.........................................................................2

       A.    Parties and Relevant Non-Parties to this Action. ..................................2

       B.    M7D Entered the Collaboration Agreement on September 1,
             2022. ..................................................................................................3

       C.    Plaintiff Initiated Arbitration Proceedings Against M7D....................5

       D.    Tree Line, a Non-Party Lender, Foreclosed on M7D's Assets.............6

       E.    M7D Filed For Bankruptcy, Listing HRA Group as a Creditor. ..........7

       F.    Tree Line Formed, Owns, and Controls WDAM.................................8

       G.    Plaintiff Sued Defendants to Collect M7D's Debts. ............................9

III.   ARGUMENT.................................................................................................9

       A.    Plaintiff's Alter Ego Claims Are Not Properly Before this Court
             While M7D's Bankruptcy Proceeding Is Pending. ...........................10

       B.    Plaintiff Has Not Sufficiently Pleaded that M7D is an Alter Ego
             of Huron LLC. ..................................................................................13

       C.    Plaintiff's Fraud Claim Against Huron LLC Fails.............................18

       D.    Plaintiff's Fraud Claim Against Mr. Grunza Fails.............................21

IV.    CONCLUSION............................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................9

*Bassett v. NCAA*,
    528 F.3d 426 (6th Cir. 2008) ..............................................................10

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................10

*U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*,
    501 F.3d 493 (6th Cir. 2007) ............................................19, 20, 22, 24

*U.S. ex rel. Bogina v. Medline Indus., Inc.*,
    809 F.3d 365 (7th Cir. 2016) ..............................................................20

*Cates v. Crystal Clear Techs., LLC*,
    874 F.3d 530 (6th Cir. 2017) ..............................................................10

*Cedarbrook Plaza, Inc. v. Gottfried*,
    1997 WL 330390 (E.D. Pa. June 6, 1997).........................................12

*CH Holding Co. v. Miller Parking Co.*,
    973 F. Supp. 2d 733 (E.D. Mich. 2013) ...........................................12

*Chase Bank USA, N.A. v. City of Cleveland*,
    695 F.3d 548 (6th Cir. 2012) ..............................................................10

*DBI Invs., LLC v. Blavin*,
    617 F. App'x 374 (6th Cir. 2015).........................................20, 21, 23

*Diamond Computer Sys., Inc. v. SBC Commc'ns, Inc.*,
    424 F. Supp. 2d 970 (E.D. Mich. 2006) ...........................................21

*Elliott v. Gen. Motors LLC*,
    605 F. Supp. 3d 937 (E.D. Mich. 2022) ...........................................20

*Fiscal Ct. v. RCC Big Shoal, LLC*,
    626 F. Supp. 3d 947 (E.D. Ky. 2022)................................................14

*In re Flint Water Cases*,
    584 F. Supp. 3d 383 (E.D. Mich. 2022) ......................................................13, 16

*Harrison v. Soroof Int'l, Inc.*,
    320 F. Supp. 3d 602 (D. Del. 2018)..............................................................11

*JAC Holding Enterprises, Inc. v. Atrium Cap. Partners, LLC*,
    997 F. Supp. 2d 710 (E.D. Mich. 2014) ................................................18, 23, 24

*Keams v. Tempe Tech. Inst., Inc.*,
    993 F. Supp. 714 (D. Ariz. 1997) .................................................................14

*Linus Holding Corp. v. Mark Line Indus., LLC*,
    376 F. Supp. 3d 417 (D.N.J. 2019).................................................................14

*Llewellyn-Jones v. Metro Prop. Grp.*,
    LLC, 22 F. Supp. 3d 760 (E.D. Mich. 2014).......................................13, 14, 18

*In re M7D Corporation*,
    Case No. 23-11699-TMH (Bankr. D. Del.)..................................................1, 7, 8

*Miller v. Laidlaw & Co. (UK)*,
    2013 WL 1303382 (E.D. Mich. Mar. 28, 2013)................................................23

*Murray v. Miner*,
    876 F. Supp. 512 (S.D.N.Y. 1995), *aff'd*, 74 F.3d 402 (2d Cir.
    1996) .....................................................................................................11

*Orlando Residence Ltd. v. Alpert*,
    526 F. Supp. 3d 410 (E.D. Wis. 2021) .............................................................14

*Phillips v. BAC Home Loans Servicing, LP*,
    2011 WL 860767 (E.D. Mich. Mar. 9, 2011)....................................................23

*Quicken Loans Inc. v. United States*,
    152 F. Supp. 3d 938 (E.D. Mich. 2015) .............................................................9

*Texas Inns, Inc. v. Prime Hosp. Corp.*,
    462 F.3d 666 (6th Cir. 2006) ...................................................................10, 19

*Wier v. Countrywide Bank, N.A.*,
    2011 WL 1256944 (E.D. Mich. Mar. 31, 2011)................................................23

*Zakora v. Chrisman*,
    44 F.4th 452 (6th Cir. 2022) ...................................................................10

**STATUTES**

11 U.S.C. § 704(a) .................................................................................11

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 9(b)...........................................18, 19, 24

Federal Rule of Civil Procedure 12(b)(6) .................................................9

## STATEMENT OF ISSUES PRESENTED

1.     May Plaintiff sue Huron LLC to recover non-party M7D Corporation's ("M7D") debts while M7D's Chapter 7 bankruptcy proceeding is pending, under circumstances in which Plaintiff's claims belong to M7D's Chapter 7 Bankruptcy Trustee?

**Defendants' Answer:  No.**

2.     Does Plaintiff's Complaint plead facts that, accepted as true, establish a facially plausible basis to pierce M7D's corporate veil and hold Huron LLC liable for M7D's alleged breach of contract and fraud in the inducement?

**Defendants' Answer:  No.**

3.     Does Plaintiff's Complaint allege with particularity that Huron LLC directed M7D to make material false representations to Plaintiff, with the intent that Plaintiff would rely upon those representations to its detriment?

**Defendants' Answer:  No.**

4.     Does Plaintiff's Complaint allege with particularity that Mr. Grunza made material false representations to Plaintiff or directed another individual to make material false representations to Plaintiff, with the intent that Plaintiff would rely upon those representations to its detriment?

**Defendants' Answer:  No.**

**CONTROLLING AND/OR MOST APPROPRIATE AUTHORITY**

Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 9(b)

## I.     INTRODUCTION

Plaintiff is an unsecured creditor of M7D Corporation ("M7D"), a non-party to this case with an active Chapter 7 bankruptcy proceeding pending in the U.S. Bankruptcy Court for the District of Delaware.  *See In re M7D Corporation*, Case No. 23-11699-TMH (Bankr. D. Del.) (Horan, J.).  In a blatant attempt to circumvent that bankruptcy proceeding, Plaintiff sued Huron LLC, a private equity firm, and M7D's former CEO to collect the very same alleged debts that are encompassed by M7D's bankruptcy petition.   While other unsecured creditors of M7D await resolution of their claims by a court-appointed bankruptcy Trustee, whose role is to liquidate M7D's assets and distribute those assets to M7D's creditors *pro rata* in accordance with the Bankruptcy Code, Plaintiff filed this lawsuit in a meritless effort to jump the line.  Its subversion of the bankruptcy process should not be authorized or encouraged by this Court.

Even setting aside the improper posture of this lawsuit, Plaintiff's Complaint has no merit.  Both claims against Huron LLC rest on a theory that Huron LLC is an alter ego of M7D.  In support of that theory, Plaintiff alleges in conclusory fashion, solely "on information and belief," that Huron LLC orchestrated M7D's bankruptcy and funneled assets into a new diamond company so that Huron LLC could turn a profit while shedding M7D's liabilities.  ***These allegations are patently false***. Documents of public record (as well as an article cited by Plaintiff in the Complaint)

1

make clear that Huron LLC did not form, and has never owned or controlled, a new diamond company.  Instead, the new company was formed by a third-party lender of M7D—another entity that Huron LLC has never owned or controlled—who foreclosed on substantially all of M7D's assets.  This foreclosure promptly led to M7D filing its Chapter 7 bankruptcy petition.  Plaintiff has not pleaded any other facts sufficient to allege that Huron LLC is the alter ego of M7D.

Plaintiff's fraud in the inducement claim against Huron LLC also fails for other reasons.  This claim fails to allege with particularity a single false representation made by Huron LLC, or even by M7D at Huron LLC's alleged direction, that could sustain a fraud claim under Michigan law.

Count III, Plaintiff's fraud claim against Mr. Grunza, is also plainly deficient and must be dismissed.  Plaintiff does not come close to alleging with requisite particularity that Mr. Grunza personally defrauded Plaintiff.

For a host of reasons, therefore, this lawsuit is improper and does not allege plausible claims for relief.  The Complaint must be dismissed with prejudice.

## II.    FACTUAL BACKGROUND

### A.    Parties and Relevant Non-Parties to this Action.

Defendant Huron LLC is a Detroit-based middle-market private equity firm. In or around 2019, a non-party affiliate entity of Huron LLC made an equity investment in non-party Delaware corporation M7D, a laboratory-grown diamond

producer.  M7D's founder served as the company's CEO until M7D named non-party Sue Rechner as CEO in September 2019.[1]  In or around October 2020, M7D named non-party Caleb Wood as COO.[2]  Defendant Grunza replaced Rechner as CEO of M7D in December 2022, several months after M7D entered the Collaboration Agreement (the "Agreement") at issue in this case.[3]

Plaintiff represents that it is "the lab grown diamond division" of non-party HRA Group, "a manufacturer and distributor of rough and polished diamonds and diamond jewelry."  (Compl. ¶ 17.)  Plaintiff alleges that the individuals with whom M7D and Mr. Grunza allegedly communicated about the Agreement, Itay Ariel and Aaron Ariel, are "HRA Group" personnel.  (*See* Compl. ¶¶ 37, 47–50.)

**B.    M7D Entered the Collaboration Agreement on September 1, 2022.**

Plaintiff alleges that in or around 2021, M7D was searching for a North

---

[1]    *See Huron Capital Completes Equity Investment in WD Lab Grown Diamonds*, PR NEWSWIRE (Jan. 7, 2019), https://www.prnewswire.com/news-releases/huron-capital-completes-equity-investment-in-wd-lab-grown-diamonds-300773774.html; Bates, Rob, *WD Lab-Grown Diamonds Hires New CEO*, JCK (Sept. 24, 2019), https://www.jckonline.com/editorial-article/wd-lab-grown-hires-new-ceo/.

[2]    Branstrator, Brecken, *WD Lab Grown Diamonds Expands Executive Team*, NATIONAL JEWELER (Oct. 19, 2020), https://nationaljeweler.com/articles/5706-wd-lab-grown-diamonds-expands-executive-team.  The Complaint erroneously refers to Mr. Wood as "Caleb Woods."

[3]    Bates, Rob, *WD Lab Grown Appoints New CEO As Sue Rechner Retires*, JCK (Dec. 16, 2022), https://www.jckonline.com/editorial-article/wd-lab-grown-new-ceo/.

American facility to manufacture and polish rough, laboratory-grown diamonds into finished products that could be sold to customers. (Compl. ¶ 20.) M7D identified Crossworks Manufacturing Ltd., the "manufacturing company of the HRA Group," (*Id.* at ¶ 21), as a potential partner. Crossworks operated two diamond polishing facilities: a large facility in Vietnam and a small facility in Toronto, Ontario (the "Toronto Facility"). (*Id.*) Plaintiff alleges that the Toronto Facility was too small to accommodate M7D's needs without expansion. (*Id.*)

On September 1, 2022, Plaintiff and M7D entered into the Collaboration Agreement. (Agreement at 1.) The Agreement is signed by Caleb Wood and Reut Rothstein, identified as Plaintiff's Director. (*Id.* at 12.) Neither Defendant is a party to the Agreement and Plaintiff does not allege that either Defendant participated in its negotiation, drafting, or execution. *See* (Compl. ¶¶ 17–32). The Agreement is governed by the laws of the Province of British Columbia and the laws of Canada, (*id.* at § 10.8), and contains a binding arbitration provision. (*Id.* at § 8.2.) Subject to the arbitration provision, M7D and Plaintiff agreed that the Courts of the Province of British Columbia have exclusive jurisdiction to hear any dispute or other proceeding relating to the Agreement. (*Id.* at § 10.8.)

Under the Agreement, Plaintiff agreed to establish and operate the Toronto Facility with sufficient capacity to manufacture rough diamonds "to the production capacity and standards set forth in Schedule A" of the Agreement. (*Id.* at § 2.1(a).)

Schedule A is not attached to the Complaint,[4] but Plaintiff alleges that the Toronto Facility's production capacity was "estimated at the time of contracting at 1,000 carats per month." (Compl. ¶ 27.) Plaintiff agreed to manufacture M7D's diamonds at the Toronto Facility beginning on the date of its completion, January 16, 2023, but reserved the right to manufacture diamonds at the Toronto Facility for third parties other than M7D. (*Id.* at § 3.2(a)–(c); Compl. ¶ 34.) M7D began delivering diamonds to Plaintiff in January 2023. (Compl. ¶ 41.)

Under the Agreement, Plaintiff and M7D also agreed to a pricing schedule for diamonds manufactured at the Vietnam Facility. (Agreement § 5.1.) This schedule contemplates the manufacturing of a range of 3,000 to 11,000 carats per month at the Vietnam Facility alone. (*Id.* at Schedule B.) The Agreement does not contain terms relating to the expansion of the Vietnam Facility. *See generally* (Agreement § 3.1; 5.1). Plaintiff alleges that at some time before filing this Complaint, it "invested substantial capital to expand the operations of the Vietnam Facility" and "incurred significant costs to perform . . . upgrades." (Compl. ¶¶ 38–40.)

## C.   Plaintiff Initiated Arbitration Proceedings Against M7D.

According to the Complaint, M7D made unspecified "token payments" to Plaintiff but did not pay Plaintiff's invoices for the Toronto Facility expansion or Plaintiff's diamond manufacturing and polishing services in full. (Compl. ¶ 46.)

---

[4]   This document (if it exists) is uniquely within Plaintiff's possession.

Plaintiff alleges that it sent written notice to M7D of its breach of the Agreement on May 17, 2023, (*id.* at ¶ 54), after which Plaintiff and M7D "engaged in various commercial discussions regarding the Agreement."  M7D allegedly "took no steps to remedy the breaches of the Agreement . . . and no resolution was reached."  (*Id.* at ¶ 55.)

On July 7, 2023, Plaintiff filed a notice of arbitration against M7D in British Columbia.  (*Id.* at ¶ 56.)  Plaintiff sought "all of its [alleged] outstanding invoices (more than $1.8 million)," as well as alleged equipment and labor costs for the Toronto Facility, lost profits, and reliance damages.  (Compl. ¶ 56.)  Plaintiff alleges that it terminated the Agreement on September 20, 2023, (*id.*), but the Complaint does not allege whether or how the arbitration proceeding resolved.

### D.    Tree Line, a Non-Party Lender, Foreclosed on M7D's Assets.

On October 10, 2023, before M7D's bankruptcy filing, non-party Tree Line Direct Lending, LP ("Tree Line")[5] executed a strict foreclosure of M7D's assets in partial satisfaction of M7D's secured debts.  *See* (Exhibit 1, M7D Bankruptcy Petition, at 17); *see also* (*id.* at 26, 54).  As M7D's only secured creditor (*id.* at 26), Tree Line foreclosed on substantially all of M7D's assets, including, but not limited to, substantially all of M7D's cash, intellectual property, and equipment, in

---

[5]    Plaintiff references Tree Line, without naming this entity, in the Complaint. (Compl. ¶ 59.)

satisfaction of $30 million of Tree Line's secured debts.  *See* (*id.* at 54).

Huron LLC has never owned or invested in Tree Line.  Indeed, Plaintiff does not allege that Huron LLC and Tree Line have any relationship other than as alleged "co-investors in [M7D]."  *See* (Compl. ¶ 59).  Accordingly, neither Huron LLC nor any of its affiliate entities received assets from M7D or profited from Tree Line's strict foreclosure of M7D's assets.

### E.   M7D Filed For Bankruptcy, Listing HRA Group as a Creditor.

On October 11, 2023, M7D filed a voluntary petition for relief under Chapter 7 of Title 11 of the U.S. Code in the Bankruptcy Court for the District of Delaware.  (Ex. 1 at 1.)  On October 16, 2023, Jeoffrey Burtch was appointed by the Bankruptcy Court as the Chapter 7 Trustee of M7D's case.  *In re M7D Corporation*, Case No. 23-11699-TMH, Dkt. No. 6.

Plaintiff alleges in reference to the bankruptcy petition that M7D "listed a little over $3 million in assets (much of which was in the form of accounts receivable owed to it) but more than $44.7 million in liabilities."  (Compl. ¶ 14);  (Ex. 1 at 19).  Among M7D's liabilities are roughly $8.7 million in unsecured claims held by one hundred different creditors.  (Ex. 1 at 19, 28–42.)  HRA Group is one such unsecured creditor, with a claim for $1,878,790.31, reportedly incurred between February and September 2023.  (*Id.* at 33.)  In addition, M7D has more than $36 million in secured claims that are owed to Tree Line, (*id.* at 26), which is the remaining balance of Tree

Line's secured debt following the strict foreclosure.

In addition to HRA Group's claim for more than $1.8 million, M7D's bankruptcy petition makes explicit reference to the arbitration proceeding between M7D and Plaintiff in British Columbia, which M7D described as "[p]ending" at the time of the bankruptcy.  (*Id.* at 55); *see also* (*id.* at 74 (listing payments to arbitration vendor through October 2023)).  The bankruptcy petition further discloses that HRA Group is—or at least was, as of October 11, 2023—holding $712,035.00 worth of M7D's diamond inventory—just under a quarter of M7D's total assets at the time of the bankruptcy filing.  (*Id.* at 22.)

As of the filing of this Motion, M7D's bankruptcy case is still pending.  *See In re M7D Corporation*, Case No. 23-11699-TMH.

### F.    Tree Line Formed, Owns, and Controls WDAM.

Following the strict foreclosure of substantially all of M7D's assets by Tree Line and M7D's filing of its Chapter 7 bankruptcy petition, Tree Line Capital Partners, LLC launched a new entity, WD Advanced Materials ("WDAM"). (Compl. ¶ 59 (citing *WDAM, LLC Ushers in a New Era in Diamond Innovation with Company Launch*, PR NEWSWIRE (Nov. 1, 2023).)  WDAM was formed to pursue government contracts and industry collaborations, using diamonds to support U.S.-

based manufacturing operations instead of jewelry.  (*Id.*)[6]  WDAM is majority-owned by Tree Line.  (*Id.*)  Just as Huron LLC has never owned or invested in Tree Line, Huron LLC has never had ownership of, and has never invested in, WDAM. *See* (*id.*).

### G.    Plaintiff Sued Defendants to Collect M7D's Debts.

On April 9, 2024, Plaintiff filed this suit.  Plaintiff asserts two claims against Huron LLC—breach of contract and fraud in the inducement—under the theory that M7D is Huron LLC's alter ego.  Plaintiff asserts one fraud in the inducement claim against Mr. Grunza directly.  For its damages, Plaintiff seeks amounts that M7D allegedly owes under the Agreement, additional "lost profits" it expected to earn from M7D under the Agreement, and "reliance damages" for costs it allegedly incurred to expand the Vietnam Facility.

### III.   ARGUMENT

To survive a Rule 12(b)(6) Motion, the Complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Quicken Loans Inc. v. United States*, 152 F. Supp. 3d 938, 944 (E.D. Mich. 2015).  Facial plausibility exists where the "plaintiff pleads factual content that allows the court to draw the reasonable

---

[6]    The Complaint includes a link to a page on WDAM's website, *see* (Compl. ¶ 60); however, this link leads to an error page when using a web browser.

inference that the defendant is liable for the misconduct alleged." *Zakora v. Chrisman*, 44 F.4th 452, 464 (6th Cir. 2022). This requires "more than labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When a complaint avers fraud, or when a cause of action seeks to pierce the corporate veil on the basis of fraud, "the circumstances constituting fraud . . . [must] be stated with particularity." *See Texas Inns, Inc. v. Prime Hosp. Corp.*, 462 F.3d 666, 672 (6th Cir. 2006) (citing Fed. R. Civ. P. 9(b)).

The Court may consider attachments to the Complaint and exhibits attached to Defendants' Motion, so long as the exhibits are "referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008). The Court may also consider "public records" and take "judicial notice of developments in related proceedings in other courts of record." *Id.* (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)); *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 553 n.2 (6th Cir. 2012) (citations omitted). If an exhibit contradicts allegations in a complaint, "the exhibit trumps the allegations." *Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 536 (6th Cir. 2017).

## A.   Plaintiff's Alter Ego Claims Are Not Properly Before this Court While M7D's Bankruptcy Proceeding Is Pending.

Before reaching the merits of M7D's claims against Huron LLC, this Court must decide a threshold issue: whether Plaintiff may sue to recover M7D's debts while the bankruptcy is pending. Because Plaintiff's alter ego claims against

Huron LLC belong to the bankruptcy Trustee, Plaintiff may not do so.

Plaintiff's claims against Huron LLC, which seek to pierce M7D's corporate veil to recover M7D's alleged debts, are not Plaintiff's claims to bring. These claims instead belong to Jeoffrey Burtch, the Chapter 7 Trustee of M7D's case. The primary role of the Chapter 7 Bankruptcy Trustee is to maximize the return of M7D's assets to M7D's creditors. *See generally* 11 U.S.C. § 704(a). If there were any evidence (there is none) that M7D was a mere instrumentality of Huron LLC, such that Huron LLC "cause[d] M7D to declare bankruptcy" while "raid[ing] its assets" to "avoid [M7D's] liability," launch WDAM, and turn a profit, *see* (Compl. ¶¶ 5, 57, 60–61, 80, 89), **any of M7D's ninety-nine other unsecured creditors, or Tree Line, could encourage the Trustee to pursue Huron LLC for M7D's debts**. Accordingly, claims premised on this theory belong to the Trustee to raise for the potential benefit of all creditors. *See, e.g.*, *Harrison v. Soroof Int'l, Inc.*, 320 F. Supp. 3d 602, 629 (D. Del. 2018)[7] (finding, on motion to dismiss, that alter ego-based claim was property of debtor's estate in ongoing bankruptcy proceeding and claim was void due to the pendency of the bankruptcy proceeding) (citing cases); *Murray v. Miner*, 876 F. Supp. 512, 516 (S.D.N.Y. 1995), *aff'd*, 74 F.3d 402 (2d Cir. 1996) (finding,

---

[7]     Delaware law applies to the question of whether Plaintiff's claims belong to M7D's Trustee because M7D, the debtor entity, is a Delaware corporation. *See Murray v. Miner*, 876 F. Supp. 512, 516 (S.D.N.Y. 1995), *aff'd*, 74 F.3d 402 (2d Cir. 1996).

on motion to dismiss applying Delaware law, that alter ego claim belonged to bankruptcy trustee and observing that this rule "ensures that all . . . creditors receive equal treatment: otherwise, those who asserted alter ego claims first would obtain payment of the claims in preference to and to the detriment of other creditors, . . . despite having no greater claim on the alter ego's assets"); *cf. CH Holding Co. v. Miller Parking Co.*, 973 F. Supp. 2d 733, 738 (E.D. Mich. 2013) (dismissing alter ego claims which sought to reach assets of bankrupt company where claims "would trench upon the prerogative of the bankruptcy trustee"); *Cedarbrook Plaza, Inc. v. Gottfried*, 1997 WL 330390, at *9 (E.D. Pa. June 6, 1997) (finding that plaintiff's alter ego claim, alleging that non-debtor defendant transferred debtor's assets to a newly created corporate entity that amounted to nothing more than a continuation of the debtor, for the purpose of defrauding creditors, was a "general one" that "would benefit all creditors" and was "the property of the estate").

For this reason, the Court must dismiss M7D's alter ego claims against Huron LLC in deference to the bankruptcy proceeding before Judge Horan. Should the Court decline to do so, there is a high risk of inconsistent judgments from courts presented with overlapping efforts by creditors to recover M7D's debts. For example, a ruling from this Court that Huron LLC must pay M7D's debts, on the basis of Huron LLC's alleged fraudulent "us[e of] the U.S. Bankruptcy Code to shed [M7D's] liabilities," (Compl. ¶ 60), would incurably conflict with a future Chapter 7

discharge of M7D's debts in the bankruptcy proceeding.  It is also possible that M7D's other creditors who learn of Plaintiff's present attempt to collect M7D's debts outside of the bankruptcy will bring their own claims for relief on similar, meritless grounds.  The potential for conflicting rulings from district courts around the country as to whether Plaintiff's alter ego theory has legs is untenable—and entirely avoidable.

> **B.   Plaintiff Has Not Sufficiently Pleaded that M7D is an Alter Ego of Huron LLC.**

Counts I and II of the Complaint also fail to allege facts that support plausible claims for relief on the basis of alter ego liability.  To find Huron LLC liable to Plaintiff for M7D's conduct, the Court must first find that Huron LLC is M7D's corporate parent, and then determine it is appropriate to pierce M7D's corporate veil.

Corporate veil-piercing, an equitable remedy, is "sparingly invoked." *In re Flint Water Cases*, 584 F. Supp. 3d 383, 399 (E.D. Mich. 2022) (citing *EPLET, LLC v. DTE Pontiac N., LLC*, 984 F.3d 493, 499 (6th Cir. 2021)).  The Court must be satisfied that the plaintiff's allegations overcome a "presumption" that corporate forms must be respected, *Llewellyn-Jones v. Metro Prop. Grp.*, LLC, 22 F. Supp. 3d 760, 796 (E.D. Mich. 2014) (citation omitted), by pleading facts that show "(1) the corporate entity is a mere instrumentality of another entity . . . ; (2) the corporate entity was used to commit a fraud or wrong; and (3) the plaintiff suffered an unjust loss." *Id.* (citation omitted).  When assessing the first element, courts may consider

13

the following factors: "[1] undercapitalization of the corporation, [2] the maintenance of separate books, [3] the separation of the corporate . . . finances, [4] the use of the corporation to support fraud or illegality, [5] the honoring of corporate formalities, and [6] whether the corporation is merely a sham."  *Id.* (quoting *Laborers' Pension Trust Fund v. Sidney Weinberger Homes, Inc.*, 872 F.2d 702, 704–705 (6th Cir. 1988)).

Plaintiff fails to even conclusorily allege five of the six "mere instrumentality" factors.  And no factor is pleaded with requisite specificity for Plaintiff's cause of action to pierce M7D's corporate veil on the basis of fraud.

With respect to the first factor, undercapitalization, Plaintiff alleges that M7D "was severely undercapitalized . . . by the time of its bankruptcy," when it "listed a little over $3 million in assets . . . but more than $44.7 million in liabilities."  (Compl. ¶ 14.)  However, "to demonstrate that an entity is undercapitalized" for veil-piercing purposes, "a plaintiff must sufficiently allege that it was inadequately capitalized ***at the time of its organization***."  *Linus Holding Corp. v. Mark Line Indus., LLC*, 376 F. Supp. 3d 417, 426 (D.N.J. 2019) (citation omitted) (emphasis added); *see also Fiscal Ct. v. RCC Big Shoal, LLC*, 626 F. Supp. 3d 947, 953 (E.D. Ky. 2022); *Orlando Residence Ltd. v. Alpert*, 526 F. Supp. 3d 410, 420 (E.D. Wis. 2021); *Keams v. Tempe Tech. Inst., Inc.*, 993 F. Supp. 714, 724 (D. Ariz. 1997)).  The Complaint contains no factual allegations that M7D was undercapitalized when it was formed.

This factor weighs against piercing M7D's corporate veil.

Turning to the second and third factors, Plaintiff does not allege any facts that suggest Huron LLC and M7D did not "maintain[ ] . . . separate books" or did not "separate[e] . . . corporate . . . finances."  Plaintiff tangentially alleges that on April 4, 2023, Mr. Grunza told Aaron Ariel that M7D was "backed by Huron Capital." (Compl. ¶¶ 15, 47.)  Even if this allegation were true, the mere fact that a portfolio entity has a private equity firm's "backing" is not grounds for veil-piercing.  Otherwise, every private equity firm would be considered an alter ego of the companies in which it invests.  Likewise, Plaintiff's vague allegation that on April 14, 2023, an unnamed M7D representative hypothetically proposed "restructuring" the Collaboration Agreement to "involve[ ] an exchange of Huron Capital's equity" (Compl. ¶ 16) does not suggest that M7D's books or finances were comingled, let alone that M7D ever did in fact "exchange [Huron LLC's] equity" for M7D's alleged debts.  These factors weigh against piercing M7D's corporate veil.

Plaintiff also fails to allege facts in support of the final two factors: the "honoring of corporate formalities" and "whether the corporation is merely a sham."  Conceivably relevant to these factors, the Complaint alleges that M7D "was a majority-owned subsidiary" of Huron LLC "[d]uring the relevant periods of 2022 and 2023." (Compl. ¶ 13.)  But even if the entities had a parent-subsidiary

relationship,[8] this relationship suggests only that M7D did at least facially honor corporate formalities, not disregard them. *Cf. In re Flint Water Cases*, 584 F. Supp. 3d 383, 399 (E.D. Mich. 2022). In furtherance of this point, Plaintiff itself alleges that M7D had its own set of directors and officers, not all of whom allegedly also held positions with Huron LLC. *See* (Compl. ¶¶ 13, 58). M7D's filing of a voluntary Chapter 7 bankruptcy petition also evidences its respect for corporate formalities for the benefit of its own, independent creditors. In that proceeding, a Trustee has been charged with liquidating M7D's—not Huron LLC's—assets and distributing such assets to creditors of M7D. *See generally* (Ex. 1). At the very least, M7D's detailed petition debunks the (unpled) notion that M7D is now or was ever a mere "sham." These factors accordingly weigh against piercing M7D's corporate veil.

The only "mere instrumentality" factor that Plaintiff arguably alleges in conclusory fashion is that Huron LLC used M7D "to support fraud or illegality"— namely, by causing M7D to declare bankruptcy, then forming WDAM as an alter ego entity using assets that it "raided" from M7D. (Compl. ¶¶ 5, 60–61, 80, 89.) These allegations cannot sustain a finding of alter ego liability because they are

---

[8]    This Court must accept facts alleged in Plaintiff's Complaint as true at the pleadings stage. However, M7D is not now, and was never, a "subsidiary" of Huron LLC. In fact, Huron LLC has never held equity in M7D. Plaintiff's ignorance of this fact (or knowledge of it, and decision to sue Huron LLC anyway) underscores the misguided and underhanded nature of this lawsuit: an attempt to squeeze funds out of a third-party entity that it considers collectable.

plainly untrue.  Plaintiff does not allege that Huron LLC launched WDAM or that Huron LLC owns, or has any investment in, WDAM.  That is because Tree Line, M7D's lender and secured creditor (another entity in which Huron LLC does not have any ownership or investment interest), foreclosed on substantially all of M7D's assets.  This foreclosure promptly led to M7D filing its Chapter 7 bankruptcy petition.  *See* (Ex. 1 at 17); *see also* (*id.* at 26, 54).  Tree Line, not Huron LLC, then independently launched WDAM.  *See* (Compl. ¶ 59.)  While Mr. Grunza did assume an interim leadership position as WDAM's "acting CEO" to assist the company after WDAM's formation (*id.*), Mr. Grunza stepped down from this position following the initial formation period.  Grunza does not hold equity in WDAM; nor does Plaintiff allege that he does.

Even if there were an ounce of truth to Plaintiff's "fraud or illegality" allegations, however, they still would not establish "the existence of a fraudulent corporate shell game" at the time of M7D's alleged underlying breach of contract or alleged fraud.  This is fatal to Plaintiff's alter ego theory.  *See Se. Texas Inns, Inc.*, 462 F.3d at 680–81 (affirming 12(b)(6) dismissal of veil-piercing claim and citing cases for the proposition that a plaintiff must allege that ***at the time of the execution of the underlying contract***, there were grounds to believe that the plaintiff was in reality dealing with the defendant parent company).  Plaintiff's blanket allegations that Huron LLC caused M7D's bankruptcy and raided M7D's assets are also

insufficient to sustain an alter ego-premised fraud claim under Rule 9(b).  *See* Section E, *infra*.  For all of those reasons, this factor also weighs against piercing M7D's corporate veil.

Because Plaintiff's Complaint does not contain any facts sufficient to support a plausible claim to pierce M7D's corporate veil, Counts I and II must be dismissed with prejudice.  *Llewellyn-Jones*, 22 F. Supp. 3d at 797.

### C.    Plaintiff's Fraud Claim Against Huron LLC Fails.

Count II also fails for several reasons independent from Plaintiff's failure to allege that Huron LLC is an alter ego of M7D.

To prevail on its fraud in the inducement claim under Michigan law, Plaintiff must establish that "(1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth and as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage." *JAC Holding Enterprises, Inc. v. Atrium Cap. Partners, LLC,* 997 F. Supp. 2d 710, 730 (E.D. Mich. 2014) (citations and quotations omitted).  Fraud must be pleaded with particularity under Rule 9(b), meaning that the plaintiff must, at a minimum, identify "the time, place, and content of [an] alleged misrepresentation . . . ; the fraudulent scheme; the fraudulent intent

of [the defendant]; and [resultant] injury." *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 504 (6th Cir. 2007).  Moreover, "[w]hen a cause of action seeks to pierce the corporate veil on the basis of fraud, it is subject to Fed. R. Civ. P. 9(b)." *Se. Texas Inns, Inc.*, 462 F.3d at 672.

With respect to the first element of its alter ego-based fraud claim, Plaintiff alleges that M7D "made several material representations" "[a]t Huron [LLC's] improper direction," (Compl. ¶ 84), and lists the following alleged facts in support:

(a)   M7D represented "that it intended to increase the volume of its orders to 11,000 to 12,000 carats by the end of October 2023, despite knowing at the time that it had no intention of doing so."

(b)   M7D "entered into [the Agreement], despite knowing at the time that it had no intention of performing . . . under that contract."

(c)   M7D "delivered diamonds for processing in February 2023, despite knowing at the time that it had no intention of paying…."

(d)   M7D "delivered diamonds for processing in March 2023, despite knowing at the time that it had no intention of paying…."

(e)   M7D "delivered diamonds for processing in May 2023, despite knowing at the time that it had no intention of paying…."

(*Id.*)  As a preliminary matter, only one of these allegations—M7D's alleged intent to increase its order volume by the end of October 2023—is a "representation" that could arguably form the basis of a fraudulent inducement claim.  The remaining four allegations are simply descriptions of M7D's execution of the Agreement and subsequent performance.  The mere fact that a party entered a contract and partially performed under that contract does not constitute a "representation" sufficient to

19

sustain a fraud claim separate from the defendant's alleged breach of contract arising from the same alleged conduct. *DBI Invs., LLC v. Blavin*, 617 F. App'x 374, 382 (6th Cir. 2015) (observing that fraud in the inducement actions address situations in which a party was allegedly "tricked into contracting" and are "***based on pre-contractual conduct*** which is, under the law, a recognized tort") (internal quotation marks and citation omitted) (emphasis added).

As for M7D's alleged representation that it intended to increase its order volume by the end of October 2023, Plaintiff fatally fails to allege with particularity how Huron LLC "improper[ly] direct[ed]" M7D to make this statement. Plaintiff only alleges, without facts in support, that "[o]n information and belief, Grunza directed Woods [sic] to make" this representation. (Compl. ¶ 37.) First, the fact that Mr. Grunza allegedly directed Wood to make this representation in March 2023 does not show that ***Huron LLC*** directed Wood to make the statement. Mr. Grunza was the CEO of M7D on March 8, 2023, when this representation was allegedly made by Wood. Second, in the context of a fraud claim, mere "information and belief" allegations, without more, do not suffice. *See U.S. ex rel. Bledsoe*, 501 F.3d at 512 ("the plaintiff must . . . set forth the factual basis for his belief"); *see also Elliott v. Gen. Motors LLC*, 605 F. Supp. 3d 937, 945 (E.D. Mich. 2022); *U.S. ex rel. Bogina v. Medline Indus., Inc*., 809 F.3d 365, 370 (7th Cir. 2016) ("Allegations based on 'information and belief' . . . won't do in a fraud case—for 'on information and belief'

can mean as little as "rumor has it.").

Moreover, the statement that Caleb Wood allegedly made on March 8, 2023 regarding M7D's intended performance "by October 2023," under a contract executed in September 2022, is not an actionable fraudulent statement. Again, this statement is not a ***pre-contractual*** representation that could have theoretically been part of a "bait-and-switch scheme" to "trick[ ] [Plaintiff] into contracting." *See Blavin*, 617 F. App'x at 381.[9] Even if it were, the statement relates to M7D's alleged aspirational future performance, not a present or past fact that M7D was attempting to conceal or misstate. "Michigan fraud jurisprudence requires that actionable misrepresentations must relate to an existing or past fact; promises relating to future actions when unfulfilled do not constitute fraud." *Diamond Computer Sys., Inc. v. SBC Commc'ns, Inc*., 424 F. Supp. 2d 970, 981 (E.D. Mich. 2006). Accordingly, Count II should be dismissed with prejudice.

### D. Plaintiff's Fraud Claim Against Mr. Grunza Fails.

In Count III, a fraud claim against Mr. Grunza in his individual capacity, Plaintiff recycles the same five alleged "representations" on which it relies in support

---

[9]     The Court in *DBI Invs., LLC v. Blavin* noted that the plaintiff party, which was controlled by "sophisticated businessmen," could not reasonably claim that it was tricked into entering the contract at issue on the facts presented. 617 F. App'x at 382. Although this Court need not consider Plaintiff's corporate sophistication in dismissing its fraud claims, it is worth highlighting that Plaintiff alleges (multiple times) that "[n]o reasonable person could have thought that [M7D] would be able to pay for the services it was contracting for." (Compl. ¶¶ 4, 14.)

21

of Count II.  *See* (Compl. ¶ 92).  None of these alleged representations supports Plaintiff's fraud claim for the reasons identified in Section III.D, *supra*.

Plaintiff also alleges that Mr. Grunza "directed" Caleb Wood to make two additional alleged representations to M7D: on May 5, 2023, via text message, that M7D "had approved payment for overdue invoices"; and on May 13, 15, and 17, 2023, via text message, that M7D's payment to Plaintiff was forthcoming.  (Compl. ¶¶ 48–50, 96–97.)  The familiar problem with these allegations is that Plaintiff fails to state with particularity how Mr. Grunza "directed" Wood to make the alleged representations.  Plaintiff's assertions that Mr. Grunza was "direct[ing]" these communications are based entirely on "information and belief."  (*Id.* at ¶ 51.) "Information and belief" allegations, without more, do not suffice in the context of a fraud claim.  *See U.S. ex rel. Bledsoe*, 501 F.3d at 512.

Plaintiff does point to a single representation that Mr. Grunza himself allegedly made over the phone to Aaron Ariel on April 4, 2023.  In response to Plaintiff's alleged request for unspecified "financial information" from M7D, Mr. Grunza allegedly told Ariel "that [Plaintiff] had nothing to be worried about because [M7D] was backed by Huron Capital, which he described as a large private equity firm.  Grunza further told Aaron Ariel that they still had liquidity available through a loan facility."  (Compl. ¶ 47.)  Even though Mr. Grunza allegedly delivered this statement, it does not sustain a fraud claim for several reasons.

First, the alleged statement that "[Plaintiff] had nothing to be worried about . . ." with respect to M7D's finances is not an actionable false representation. This statement, at most, reflects Mr. Grunza's personal opinion, and "it is well established under Michigan law that mere expressions of opinion, including a professional opinion, are not actionable." *Wier v. Countrywide Bank, N.A.*, 2011 WL 1256944, at *4 (E.D. Mich. Mar. 31, 2011); *see also Miller v. Laidlaw & Co. (UK),* 2013 WL 1303382, at *4 (E.D. Mich. Mar. 28, 2013) (finding that "good" and "profitable" are inactionable statements of opinion); *Phillips v. BAC Home Loans Servicing, LP*, 2011 WL 860767, at *2 (E.D. Mich. Mar. 9, 2011) ("opinions are not actionable as fraud").

Second, Mr. Grunza's alleged statement is not a pre-contractual representation that could have been part of a scheme to "trick[ ] [Plaintiff] into contracting" with M7D. *See Blavin*, 617 F. App'x at 381. Even if it were, Plaintiff would be required to show that Mr. Grunza made this representation with the intent that Plaintiff would act upon it; that Plaintiff did act upon it; and that Plaintiff suffered resultant damage. *JAC Holding Enterprises, Inc.,* 997 F. Supp. at 730 (E.D. Mich. 2014). Critically, the Complaint does not allege that Plaintiff acted to its detriment in reliance on Mr. Grunza's alleged statement on April 4, 2023, which was made long after the parties entered the Agreement. Plaintiff does not allege that it changed its position in any way based upon Mr. Grunza's alleged representation that M7D was backed by

Huron Capital and had liquidity—for instance, by ramping up its manufacturing and polishing efforts or by hiring more workers to accommodate an influx of diamonds from M7D.  On the contrary, the Complaint states that Plaintiff sent M7D written notice of breach shortly after Aaron Ariel's alleged phone call with Mr. Grunza, in May 2023.  (Compl. ¶ 54.)

Third, Plaintiff fails to allege that Mr. Grunza's alleged representation that M7D was backed by Huron Capital, and that M7D had liquidity, was *false*.  It is fundamental to a fraud claim that the alleged underlying statement be false.  *See JAC Holding Enterprises, Inc.*, 997 F. Supp. 2d at 730.  Further, under the heightened pleading standard for fraud claims, Plaintiff must allege with particularity how or why the statement was false; a fraudulent scheme; Mr. Grunza's fraudulent intent; and resultant injury to Plaintiff.  *U.S. ex rel. Bledsoe*, 501 F.3d at 504; Fed. R. Civ. P. 9(b).  Plaintiff does not come close to satisfying this standard.

Because the Complaint does not allege any material false representation by Mr. Grunza on which Plaintiff relied to its detriment, Count III must be dismissed with prejudice.

## IV.   CONCLUSION

For the reasons set forth herein, this Court should grant Defendants' Motion and dismiss all Counts of the Complaint with prejudice.

24

Dated: June 5, 2024

Respectfully submitted,

HONIGMAN LLP

By:  /s/ *Nick Gorga*
       Nick Gorga (P72297)
       Shannon C. Duggan (P83211)
       Jalen R. Farmer (P86859)
660 Woodward Avenue
2290 First National Building
Detroit, MI 48226
(313) 465-7402
ngorga@honigman.com
sduggan@honigman.com
jfarmer@honigman.com

*Attorneys for Defendants Huron Capital Partners LLC and Michael Grunza III*

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2024, I electronically filed the foregoing papers with the Clerk of the Court using the court's electronic filing system, which will send notification of such filing to all counsel of record.

/s/ *Nick Gorga*
Nick Gorga (P72297)

Dated:  June 5, 2024