# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | | |
|---|---|---|
| Dakota Labs Inc., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:24-cv-10922 |
| | ) | |
| v. | ) | |
| | ) | Hon. Susan K. DeClercq |
| Huron Capital Partners LLC and | ) | |
| Michael Grunza III, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF DAKOTA LABS INC.'S
## <u>SUPPLEMENTAL BRIEF</u>

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................. 1

ARGUMENT ........................................................................................................ 2

   I.   The Court should not dismiss for forum non conveniens ........................ 2

       A.   The Defendants have waived any rights under the forum-selection clause.................................................................................3

       B.   The Defendants cannot meet their burden for dismissal under the doctrine of forum non conveniens...............................................6

   II.   The contract's choice-of-law clause does not apply because Defendants waived it. ............................................................................. 11

   III.   The alter-ego claims are not property of the bankruptcy estate............. 12

       A.   Michigan law applies because there is no true conflict...................12

       B.   Even if there were a true conflict, Michigan choice-of-law rules require that Michigan law applies. .........................................17

   IV.   Michigan law applies to the merits of each claim................................. 21

       A.   The Defendants have waived any challenge to the application of Michigan law to the merits. .......................................................21

       B.   Even if the Defendants did not waive the choice-of-law issue, there is no true conflict on alter-ego liability or the breach of contract or fraud in the inducement claims....................................21

           1.   Alter ego...................................................................................22

           2.   Breach of Contract ..................................................................23

           3.   Fraud in the inducement .........................................................24

CONCLUSION................................................................................................... 25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AMD Mgmt. v. Power Up Lending Grp., Ltd.*,
2016 WL 74879 (E.D. Mich. Jan. 7, 2016) .........................................................3

*Anderson v. Durant*,
550 S.W.3d 605 (Tex. 2018) ...............................................................................25

*Associação Brasileira de Medicina de Grupo v. Stryker Corp.*,
891 F.3d 615 (6th Cir. 2018) ...................................................................3, 6, 7, 8

*Black v. Dixie Consumer Prods. LLC*,
2018 WL 1144592 (W.D. Ky. Mar. 2, 2018) .....................................................11

*BMF Trading v. Abraxis Holdings*,
2002 BCSC 590 (B.C. 2002) ...............................................................................13

*In re Buccaneer Res., LLC*,
912 F.3d 291 (5th Cir. 2019) ........................................................................15, 17

*Camp Roofing Ltd. v. Park Side Villas I, LLC*,
2011 WL 5829558 (Tex. App. Nov. 2, 2011) ....................................................24

*CenTra, Inc. v. Estrin*,
538 F.3d 402 (6th Cir. 2008) ...................................................................2, 17, 22

*CH Holding Co. v. Miller Parking Co.*,
903 F. Supp. 2d 551 (E.D. Mich. 2012) .............................................................20

*Compagnie des Grands Hôtels d'Afrique S.A. v. Starwood Capital
Grp. Glob. I LLC*,
2019 WL 148454 (D. Del. Jan. 9, 2019) .............................................................23

*In re CTE 1 LLC*,
2023 WL 5257940 (Bankr. D.N.J. Aug. 11, 2023) ............................................16

*D.O.N.C. v. BPH Mich. Grp.*,
2022 WL 138643 (E.D. Mich. Jan. 14, 2022) ....................................1, 11, 12, 21

*Datres v. Winfree*,
2024WL 3912544 (W.D. Mich. Aug. 23, 2024) ...................................................7

*Days Inn Worldwide, Inc. v. Sai Baba, Inc.*,
300 F. Supp. 2d 583 (N.D. Ohio 2004) ............................................................21

*Doyle v. Kontemporary Builders, Inc.*,
370 S.W.3d 448 (Tex. App. 2012)....................................................................23

*Duha v. Agrium, Inc.*,
448 F.3d 867 (6th Cir. 2006) ..............................................................................8

*In re Educators Grp. Health Tr.*,
25 F.3d at 1284 ...................................................................................15, 16, 17

*Emmett Hickman Co. v. Emilio Capano Dev., Inc.*,
251 A.2d 571 (Del. Super. Ct. 1969)................................................................24

*In re Emoral, Inc.*,
740 F.3d 875 (3d Cir. 2014) .............................................................................14

*EPLET, LLC v. DTE Pontiac N., LLC*,
984 F.3d 493 (6th Cir. 2021) ...........................................................................22

*Firexo, Inc. v. Firexo Grp. Ltd.*,
99 F.4th 304 (6th Cir. 2024) .........................................................................1, 3

*Gering v. Fraunhofer-Gesellschaft e.V.*,
2009 WL 2922847 (E.D. Mich. Sept. 9, 2009) ..................................................9

*Glenn v. TPI Petrol., Inc.*,
305 Mich. App. 698 (Mich. Ct. App. 2014) ......................................................23

*Greenstar, LLC v. Heller*,
814 F. Supp. 2d 444 (D. Del. 2011)..................................................................24

*Harrison v. Soroof Int'l, Inc.*,
320 F. Supp. 3d 602 (D. Del. 2018) .....................................................14, 16, 22

*Hefferan v. Ethicon Endo-Surgery Inc.*,
828 F.3d 488 (6th Cir. 2016) .............................................................................9

*Hurley v. Deutsche Bank Tr. Co. Ams.*,
   610 F.3d 334 (6th Cir. 2010) ............................................................4, 5

*Insight Teleservices, Inc. v. Zip Mail Servs.*,
   2014 WL 7012653 (E.D. Mich. Dec. 11, 2014) ..................................24

*Jan'e Colahar El v. Davis*,
   2013 WL 1914233 (D. Del. May 7, 2013) ..........................................25

*Johnson Assocs. Corp. v. HL Operating Corp.*,
   680 F.3d 713 (6th Cir. 2012) ...............................................................5

*Jones v. IPX Int'l Equatorial Guinea, S.A.*,
   920 F.3d 1085 (6th Cir. 2019) ..............................................................7

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
   313 U.S. 487 (1941)........................................................................18, 21

*Kosmopoulos v. Constitution Ins. Co. of Can.*,
   1 S.C.R. 2 (S.C.C. 1987)......................................................................13

*Latham v. Burgher*,
   320 S.W.3d 602 (Tex. App. 2010).......................................................23

*MA Equip. Leasing I LLC v. Tilton*,
   2010 WL 11538520 (S.D. Ohio Aug. 19, 2010) ..................................21

*MacKey v. Rising*,
   106 F.4th 552 (6th Cir. 2024) ...........................................................3, 5

*Manasher v. NECC Telecom*,
   310 F. App'x 804 (6th Cir. 2009) ........................................................5

*Maneotis v. FCA US, LLC*,
   598 F. Supp. 3d 639 (E.D. Mich. Apr. 13, 2022) ...........................2, 17

*Martinez-Porte v. Multi-Color Corp.*,
   2024 WL 3508690 (6th Cir. July 23, 2024) .........................................8

*McCoy v. Iberdrola Renewables, Inc.*,
   760 F.3d 674 (7th Cir. 2014) ..............................................................12

*Metro Mortg. Invs., LLC v. Riley*,
   2017 WL 3397453 (Mich. Ct. App. Aug. 8, 2017) ...........................................25

*MoneyForLawsuits V L.P. v. Rowe*,
   2012 WL 1068171 (E.D. Mich. Jan. 23, 2012) .......................................1, 3, 4, 6

*Morgan v. Sundance, Inc.*,
   596 U.S. 411 (2022)...............................................................................................5

*Murray v. Miner*,
   876 F. Supp. 512 (S.D.N.Y. 1995) .....................................................................20

*NetJets Aviation, Inc. v. Perlman*,
   2022 WL 17741063 (S.D. Ohio Dec. 16, 2022)...................................................20

*Nieto v. Unitron, LP*,
   2006 WL 2255435 (E.D. Mich. Aug. 7, 2006)....................................18, 19, 20

*O.J. Distrib, Inc. v. Hornell Brewing Co.*,
   340 F.3d 345 (6th Cir. 2003) ................................................................................6

*Pivnick v. White, Getgey & Meyer Co.*,
   552 F.3d 479 (6th Cir. 2009) ..............................................................................11

*Plan B Holdings, LLC v. RSLLP*,
   681 S.W.3d 443 (Tex. App. 2023).......................................................................22

*Plaskon Elec. Materials v. Allied Signal*,
   904 F. Supp. 644 (N.D. Ohio 1995) ....................................................................21

*In re Port Neches Fuels, LLC*,
   660 B.R. 177 (D. Del. 2024)...............................................................................15

*Proto-Techniques, Inc. v. Morton Indus. Sales & Serv.*,
   2008 WL 11515355 (E.D. Mich. Mar. 26, 2008).................................................9

*Pure Va. USA, LLC v. Ohserase Mfg., LLC*,
   2016WL 4239700 (E.D. Mich. Aug. 11, 2016)..................................................10

*In re RCS Engineered Prods. Co.*,
   102 F.3d 223 (6th Cir. 1996) ......................................................................*passim*

*Rosta AG v. Lovejoy, Inc.*,
2018 WL 11424771 (W.D. Mich. Apr. 23, 2018) ................................................4

*In re S.I. Acquisition, Inc.*,
817 F.2d 1142 (5th Cir. 1987) ...........................................................14

*Schwebke v. United Wholesale Mortg. LLC*,
96 F.4th 971 (6th Cir. 2024) ..................................................................5

*Silva Cruz v. GM LLC*,
464 F. Supp. 3d 906 (E.D. Mich. 2020) ...........................................3

*Sneyd v. Int'l Paper Co.*,
142 F. Supp. 2d 819 (E.D. Mich. 2001) ..........................................12

*Solo v. UPS Co.*,
947 F.3d 968 (6th Cir. 2020) .............................................................11

*Sutherland v. Kennington Truck Serv., Ltd.*,
562 N.W.2d 466 (Mich. 1997)..........................................................20

*Thoede v. Wortham*,
2018 WL 3342692 (Tex. App. July 9, 2018).....................................24

*Traton News, LLC v. Traton Corp.*,
528 F. App'x 525 (6th Cir. 2013) ......................................................5

*United States v. Daugherty*,
599 F. Supp. 671 (E.D. Tenn. 1984)..................................................21

*Urban Glob. v. DibbsBarker*,
2011 WL 2802904 (E.D. Mich. July 18, 2011).................................10

*Woodland Condos. Homeowners Ass'n v. Fannie Mae*,
2019 WL 982924 (Mich. Ct. App. Feb. 28, 2019) ............................24

**Other Authorities**

Wright & Miller, 14D Fed. Prac. & Proc. Juris. § 3828.3 (4th ed.) .........................9

## INTRODUCTION

Here are short answers to the three questions the Court asked:

1.     The Court should not dismiss for *forum non conveniens*.  Even if the forum-selection clause would otherwise apply, Defendants have waived any right to enforce that clause by "failing to raise the issue in their . . . motion to dismiss." *MoneyForLawsuits V L.P. v. Rowe*, 2012 WL 1068171, at *5 (E.D. Mich. Jan. 23, 2012).  And Defendants cannot meet their burden to establish (1) an available "adequate alternative forum" and (2) that the "private and public interests" favor dismissal.  *Firexo, Inc. v. Firexo Grp. Ltd.*, 99 F.4th 304, 310 (6th Cir. 2024).

2.     Like the forum-selection clause, the choice-of-law clause does not apply because Defendants have waived its application.  Defendants broadly relied on Michigan law in their motion to dismiss, and they expressly stated in their Reply that they "d[id] not dispute that Michigan law governs" the merits of Dakota Labs' alter-ego claims.  Dkt. 16 (Mot. to Dismiss) at 2, 11–24; Dkt. 23 (Reply) at 2. Defendants may not "reverse course now."  *D.O.N.C. v. BPH Mich. Grp.*, 2022 WL 138643, at *2 (E.D. Mich. Jan. 14, 2022).

3.a.   There is no true conflict on whether the alter-ego claims belong to the bankruptcy trustee because applying Michigan, Delaware, Texas, or British Columbia law would all result in concluding that the claims do not belong to the bankruptcy estate.  But if there were a conflict, Michigan choice-of-law rules would

choose Michigan law, under which alter-ego claims unequivocally are not "the property of the [bankruptcy] estate." *In re RCS Engineered Prods. Co.*, 102 F.3d 223, 227 (6th Cir. 1996).

3.b–3.d.     Michigan law applies to the merits of alter-ego liability, breach of contract, and fraud in the inducement for two reasons.  First, as noted above, Defendants have repeatedly relied on Michigan law and stated they are "not disputing" that Michigan law applies, and have thus waived any argument to the contrary.  Second, there is no true conflict as to any of these claims because, although there are some small differences in Michigan, Delaware, and Texas law on each claim's elements, under these facts they would "produce the same outcome." *Maneotis v. FCA US, LLC*, 598 F. Supp. 3d 639, 649 (E.D. Mich. Apr. 13, 2022). The Court should thus apply Michigan law.  *CenTra, Inc. v. Estrin*, 538 F.3d 402, 409–10 (6th Cir. 2008) (applying Michigan law to "false conflict").

## ARGUMENT

### I.     The Court should not dismiss for forum non conveniens.

Dakota Labs filed this case over nine months ago, in early April 2024.  Dkt. 1. In that time, despite fully briefing a motion to dismiss (to which Dakota Labs has responded at significant expense), Defendants have never challenged venue or sought to enforce the forum-selection clause.  *See* Mot. to Dismiss; Reply.  They failed to make such arguments even though their motion expressly noted the

presence of the forum-selection clause.  Dkt. 16 at 4.  Thus, even if the forum-selection clause otherwise governed this case, Defendants have waived any right to invoke it.  *See MoneyForLawsuits*, 2012 WL 1068171, at *5 (defendants waived forum-selection clause where they noted its existence but did not argue for dismissal or transfer).

Given this waiver, dismissal would be appropriate only if Defendants could prove that the *forum non conveniens* factors favored that outcome.  *Firexo, Inc.*, 99 F.4th at 310 (burden is on the defendant absent an enforceable forum-selection clause).  But they cannot meet that burden.  Both the "private-interest factors" and the "public-interest factors" weigh against dismissal.  *See Silva Cruz v. GM LLC*, 464 F. Supp. 3d 906, 912 (E.D. Mich. 2020).  And in any event, Defendants also will likely not provide sufficient evidence that British Columbia, Canada, is an adequate alternative forum.  *See Associação Brasileira de Medicina de Grupo v. Stryker Corp.*, 891 F.3d 615, 622 (6th Cir. 2018) ("[I]dentifying an available and adequate alternative forum is a necessary prerequisite for *forum non conveniens* dismissal.").

## A.   Defendants have waived any rights under the forum-selection clause.

Parties who act "inconsistently with a forum selection clause," waive their right to enforce that clause.  *AMD Mgmt. v. Power Up Lending Grp., Ltd.*, 2016 WL 74879, at *1 (E.D. Mich. Jan. 7, 2016); *see also MacKey v. Rising*, 106 F.4th 552, 565 (6th Cir. 2024) (parties can "constructively waive their rights" by taking actions

"inconsistent with the right[s]").  Defendants act inconsistently with their right to enforce a forum-selection clause when they "fail[] to raise the issue in their Answers to the Complaint or in a motion to dismiss or transfer the case on the basis of the forum selection clause." *MoneyForLawsuits*, 2012 WL 1068171, at *5.

As in *MoneyForLawsuits*, Defendants waived any right to enforce the forum-selection clause by remaining silent.  They failed to argue for dismissal despite expressly recognizing the existence of the clause. Dkt. 16 at 4.  And they thus took actions "inconsistent" with enforcement of the forum-selection clause and have waived any rights they may have had thereunder. *See MoneyForLawsuits*, 2012 WL 1068171, at *5.

If Defendants contest waiver, they may argue the Court should apply the standard employed by the Sixth Circuit when determining waiver of arbitration rights.  *See Rosta AG v. Lovejoy, Inc.*, 2018 WL 11424771, at *2 n.2 (W.D. Mich. Apr. 23, 2018).  Under that standard, a party waives its right to arbitrate when it engages "in two courses of conduct: (1) taking actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) delaying its assertion to such an extent that the opposing party incurs actual prejudice." *Hurley v. Deutsche Bank Tr. Co. Ams.*, 610 F.3d 334, 338 (6th Cir. 2010).

But that heightened standard is inappropriate for two reasons.  First, although the Federal Arbitration Act imposes a presumption in favor of enforcing arbitration

agreements, *id.*, there is no similar "principle that favors application of forum selection clauses," *Traton News, LLC v. Traton Corp.*, 528 F. App'x 525, 528 (6th Cir. 2013) (unpublished); *see also MacKey*, 106 F.4th at 565 (explaining typical waiver standard requires only conduct "inconsistent" with reliance on right). Second, even in the arbitration context, *Morgan v. Sundance, Inc.* abrogated the prejudice prong and explained that ordinary waiver rules should apply to arbitration clauses.  596 U.S. 411, 419 (2022); *Schwebke v. United Wholesale Mortg. LLC*, 96 F.4th 971, 974 (6th Cir. 2024) ("At a minimum, *Morgan* eliminated the prejudice requirement.").

But even under the heightened standard previously applied to arbitration clauses, Defendants have waived any rights to enforce the forum-selection clause. For example, applying that prior test, the Sixth Circuit held that a defendant waived its right to arbitrate when the defendant waited "eight months" to raise its right to arbitrate and failed to raise the issue in its answer.  *Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 718 (6th Cir. 2012).  Other cases affirmed a finding of waiver based on defendants resting on their rights over similar time frames.  *See Manasher v. NECC Telecom*, 310 F. App'x 804, 806 (6th Cir. 2009) (unpublished) (affirming waiver when defendant waited "almost a year" to move to compel arbitration and engaged in prior motion practice); *Hurley*, 610 F.3d at 338 (affirming waiver when defendants "filed multiple dispositive . . . motions" and waited "more

than two years" to raise the issue); *O.J. Distrib, Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 355 (6th Cir. 2003) (affirming waiver when defendant waited "approximately 15 months" to pursue the right to arbitrate).

Like those cases, Defendants' conduct demonstrates waiver. Defendants made no argument based on the forum-selection clause for at least nine months after the Complaint was filed—*longer* than the eight months in *Johnson Associates*. And, like each of those cases, Defendants filed a dispositive motion and reply that did not raise the forum-selection clause issue. Because Defendants' conduct would have demonstrated waiver under a test that imposed *heightened* requirements, their conduct certainly constitutes waiver under the test imposing *lower* requirements that look only at the inconsistency of their actions. *See MoneyForLawsuits*, 2012 WL 1068171, at *5.

**B.    Defendants cannot meet their burden for dismissal under the doctrine of forum non conveniens.**

A three-step test typically determines whether dismissal for *forum non conveniens* is appropriate: "After (1) the court determines the degree of deference owed the plaintiff's forum choice, the defendant[s] carr[y] the burden of (2) establishing an adequate alternative forum and (3) showing that the plaintiff's chosen forum is unnecessarily burdensome based on public and private interests." *Stryker Corp.*, 891 F.3d at 618–19. As explained in the prior subsection, Defendants have waived their right to enforce the forum-selection clause, so the typical test

applies. *See supra* pp. 3–6. And Defendants cannot show that the requirements are met here.

Under the first step of this analysis, Dakota Labs' forum choice is owed deference. Although Dakota Labs is not a Michigan citizen such that this can be considered its "home forum," a "moderate amount of deference" is still owed because there is "good reason to believe that Michigan is . . . the most convenient forum" for Dakota Labs. *Datres v. Winfree*, 2024 WL 3912544, at *5–6 (W.D. Mich. Aug. 23, 2024). Dakota Labs had a "legitimate reason" to believe that Michigan was the most convenient forum because Huron Capital operated from "offices in [Michigan]" and much of the relevant evidence and witnesses are likely in the United States. Compl. ¶ 10; *Stryker Corp.*, 891 F.3d at 619. Deference is also owed because it is unclear whether Defendants would contest that British Columbia courts are "able to exercise jurisdiction" over Defendants. *Id.*; *see supra* p.3 (explaining that it is Defendants' burden to show that British Columbia, Canada, is an adequate alternative forum).

Defendants also have not submitted evidence that British Columbia is an "available and adequate" forum. *See Jones v. IPX Int'l Equatorial Guinea, S.A.*, 920 F.3d 1085, 1090 (6th Cir. 2019). A forum's availability is typically established "when the defendant is 'amenable to process' in the other jurisdiction," which is impossible "if the foreign court cannot exercise jurisdiction over both parties."

*Stryker Corp.*, 891 F.3d at 620.  But Defendants have never stated that they consent to jurisdiction in British Columbia, and, even if they had, establishing that the foreign court can exercise jurisdiction typically requires "expert evidence showing that a particular foreign court will be able to exercise jurisdiction over the parties and the subject matter." *Id*.  This may not be necessary if the complaint alleges that the defendant is a citizen of the foreign forum and has its principal places of business in that forum.  *See id*.  But this is not such a case—Huron Capital and Grunza are citizens of Michigan and Texas, respectively.  Compl. ¶¶ 7–8.

Nor, even in the unlikely event that Defendants were to consent in their brief to jurisdiction and service of process from British Columbia courts, would this be sufficient.  *Duha v. Agrium, Inc.*, 448 F.3d 867, 879 (6th Cir. 2006) (explaining that "[a]rguments in parties' briefs are not evidence" and court should not give "undue weight to information . . . supplied only in [a] brief").  If Defendants argue they consent to jurisdiction, they must present actual evidence that they are "amenable to process in a foreign country," which is "normally [done with] an affidavit or other declaration by the party so consenting." *Stryker Corp.*, 891 F.3d at 621.  And even formal consent is not sufficient absent evidence that the consent "would be legally meaningful." *Id.*; *see also Martinez-Porte v. Multi-Color Corp.*, 2024 WL 3508690, at *2 (6th Cir. July 23, 2024) (unpublished) ("[W]e have previously doubted whether

an attorney's statement can suffice to show that a party consents to service in an alternate forum.").

Thus, dismissal under the doctrine of *forum non conveniens* is categorically inappropriate unless Defendants provide evidence showing that (1) they consent to jurisdiction in British Columbia, and (2) that such consent would "be legally meaningful."[1]

Defendants also cannot meet their burden to show that the private and public interest factors support dismissal. Huron Capital and Grunza are Michigan and Texas citizens, respectively. Compl. ¶¶ 7–8. And the core of this litigation is their use of WD Labs (a Delaware citizen), as their alter ego, so it will be "eas[ier to] access . . . sources of proof" and compel witness testimony in the United States, not Canada. *Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488, 498 (6th Cir. 2016). Likewise, the "key documents" related to Huron Capital's relationship with WD Labs will likely be in the United States. *Proto-Techniques, Inc. v. Morton Indus.*

---

[1] If Defendants *do* present such evidence, and assuming the Court concludes that the public and private interest factors weigh in favor of dismissal, any dismissal should be on the condition that (1) Defendants stipulate to submitting to personal jurisdiction in British Columbia, and (2) a British Columbia court accepts jurisdiction. *See Gering v. Fraunhofer-Gesellschaft e.V.*, 2009 WL 2922847, at *3 (E.D. Mich. Sept. 9, 2009) (dismissing based on forum non conveniens with dismissal conditioned on the "promise [that defendant would] not . . . contest jurisdiction if [p]laintiff elected to file his claims in Germany"); Wright & Miller, 14D Fed. Prac. & Proc. Juris. § 3828.3 (4th ed.) ("[T]he dismissal may be conditioned on the acceptance of the case by the alternative forum.").

*Sales & Serv.*, 2008 WL 11515355, at *2 (E.D. Mich. Mar. 26, 2008).  On balance, the likely location of documents and witnesses favors this Court retaining the case.

The public interest factors also weigh against dismissal.  Michigan has a "general interest" in deciding claims based on wrongs committed by "its citizens." *Pure Va. USA, LLC v. Ohserase Mfg., LLC*, 2016 WL 4239700, at *5 (E.D. Mich. Aug. 11, 2016).  And although British Columbia also has an interest based on the "place where the injury occurred," Michigan is "where [much of] the [fraudulent] conduct causing the injury occurred"—after all, Huron Capital is a Michigan citizen with headquarters in Michigan.  *See Urban Glob. v. DibbsBarker*, 2011 WL 2802904, at *7 (E.D. Mich. July 18, 2011).

Moreover, and as explained below, *infra* pp. 13–17, Michigan law will govern most of the issues in this case.  Thus, a federal court in Michigan that is familiar with Michigan law also weighs against dismissing for *forum non conveniens*.  *See Urban Glob.*, 2011 WL 2802904, at *8 (noting public interest in not applying "foreign law").

In short, the Court need not even reach the private and public interest factors unless Defendants consent to jurisdiction in British Columbia and present evidence this consent would be binding.  But even if they do that, Defendants cannot meet their burden to show that the private and public interest factors support dismissal.

## II.   The contract's choice-of-law clause does not apply because Defendants waived it.

Defendants have waived any argument based on the choice-of-law clause. Under Sixth Circuit law, when a party fails to dispute the applicability of a state's law, then "the choice-of-law [issue] has been waived." *Pivnick v. White, Getgey & Meyer Co.*, 552 F.3d 479, 484 (6th Cir. 2009). Thus, when a party accepts that a certain state's law applies, the party is barred from raising the choice-of-law issue. *Solo v. UPS Co.*, 947 F.3d 968, 972 n.2 (6th Cir. 2020) ("Having previously conceded [the choice-of-law] issue, UPS may not reverse course now."). Likewise, if a party relies on a state's law in its motion dismiss, that party "may not [then] reverse course." *D.O.N.C.*, 2022 WL 138643, at *2.

Defendants "explicitly submitted to the law" of Michigan in their reply brief. *See Black v. Dixie Consumer Prods. LLC*, 2018 WL 1144592, at *4 (W.D. Ky. Mar. 2, 2018) (declining to find waiver when party did not "explicitly submit" or "unduly delay[]" raising the argument). They *expressly* stated that they "d[id] not dispute that Michigan law governs" the merits of Dakota Labs' alter-ego claims. Reply at 2. They have thus waived this issue as to nearly all relevant claims—they disputed that Michigan law applies only as to whether the claims belonged to the bankruptcy estate (and even then, they did not do so based on the choice-of-law clause). *Id.*

Even setting aside this express waiver, Defendants also largely relied on Michigan law when addressing the merits of the claims in their motion to dismiss

and their reply.  *See* Mot. to Dismiss at 13 (citing Michigan law as governing alter-ego claims), 18 (citing Michigan law as governing fraud claims); Reply at 4–5 (generally citing cases applying Michigan law for alter-ego claim).

By admitting they "do not dispute" that Michigan law applies to the merits of the alter-ego claims, and by broadly relying on Michigan law in their briefing, Defendants have "acquiesced to the application of Michigan law" and may not "reverse course now."  *D.O.N.C.*, 2022 WL 138643, at *2; *see also McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014) (holding party acquiesced to application of Illinois law when it "relied entirely on Illinois law when defending its original counterclaims against [defendant's] motion for judgment on the pleadings").  The issue of choice-of-law has been waived, and Michigan law applies.  *See Sneyd v. Int'l Paper Co.*, 142 F. Supp. 2d 819, 823 n.2 (E.D. Mich. 2001) ("Because all parties acquiesce in the application of the substantive law of Michigan, the Court will apply Michigan law and need not conduct a choice-of-law analysis sua sponte.").

## III.   The alter-ego claims are not property of the bankruptcy estate.

### A.   Michigan law applies because there is no true conflict.

Defendants' Motion to Dismiss asserts that "Delaware law applies to the question of whether Plaintiff's claims belong to [WD Labs'] Trustee because [WD Labs], the debtor entity, is a Delaware corporation."  Mot. to Dismiss at 11 n.7.

Then, with little analysis of the nature of the claims, they assert that the claims "belong to the Trustee" under Delaware law because other creditors could have brought them. *Id.* at 11. But Defendants' analysis greatly oversimplifies the inquiry required by Delaware law. Under a proper analysis, there is no true conflict, because the alter-ego claims are *not* property of the estate under Michigan, Delaware, or Texas law[2] (and, as discussed below, if there were a true conflict, Michigan law would govern).

Under Michigan law, a "subsidiary does not have standing to sue its shareholders or its parent company under an alter ego theory." *In re RCS Engineered Prods.*, 102 F.3d at 226. And because a debtor "subsidiary may not bring an alter ego claim against its parent company under Michigan law, the claim does not become the property of the estate." *Id.* at 227.

_____

[2] If the Court determines that the contractual choice-of-law clause requires application of British Columbia law, it will not affect whether the alter-ego claims belong to the bankruptcy estate—British Columbia law would result in the claims belonging to Dakota Labs, not the bankruptcy estate. British Columbia law is almost identical to Michigan law when it comes to standing to bring a veil-piercing claim. The Supreme Court of Canada has written that "if the veil is to be lifted at all . . . [it] should *only* be done in the interests of third parties." *Kosmopoulos v. Constitution Ins. Co. of Can.*, 1 S.C.R. 2, 13 (S.C.C. 1987) (emphasis added). British Columbia courts have thus disallowed non-third parties from bringing veil-piercing claims. *See BMF Trading v. Abraxis Holdings*, 2002 BCSC 590 (B.C. 2002) (concluding that partners could not pierce corporate veil because they were "not third parties"). Because a subsidiary cannot bring a veil-piercing claim against its parent company under British Columbia law, it follows that WD Labs would not have been able to bring alter-ego claims and "the claim[s] [would not] become the property of the estate." *In re RCS Engineered Prods.*, 102 F.3d at 227.

Delaware and Texas law differ in that, in certain circumstances, a subsidiary has standing to pursue an alter-ego claim. *See In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1152 (5th Cir. 1987) (under Texas law, "a corporation may pierce its own corporate veil"); *Harrison v. Soroof Int'l, Inc.*, 320 F. Supp. 3d 602, 615–16 (D. Del. 2018) ("Delaware Supreme Court would allow a subsidiary to self-pierce its corporate veil to reach its parent."). But that simply is not the end of the analysis.

Under Delaware law, even if a corporation can pierce its own corporate veil as a general matter, the claim becomes property of the estate only if it is general to the creditors. *In re Emoral, Inc.*, 740 F.3d 875, 879 (3d Cir. 2014) (holding that an alter-ego claim is property of the estate only if the claim is "a general one, with particularized injury arising from it"). This is to be distinguished from a "personal" claim that is "specific to the creditor." *Id.* Such "personal" claims do *not* belong to the estate, because "other creditors generally have no interest in that claim." *Id.* Thus, to determine whether a veil-piercing action belongs to the estate under Delaware law, the court "must examine the nature of the cause of action itself" in order "to isolate theories of liability" that benefit all creditors from those that "are personal to the creditor." *In re Port Neches Fuels, LLC*, 660 B.R. 177, 186 (D. Del. 2024).

Texas law is similar but focuses on the personal or general nature of the alleged injury, rather than the cause of action. That is, whether a claim is part of the

bankruptcy estate depends on whether that cause of action only indirectly harmed the creditor ("an injury which derives from harm to the debtor") or directly harmed the creditor. *In re Educators Grp. Health Tr.*, 25 F.3d at 1284; *In re Buccaneer Res., LLC*, 912 F.3d 291, 293 (5th Cir. 2019). Courts applying Texas law must examine the "nature of the injury" for which relief is sought. *In re Buccaneer Res., LLC*, 912 F.3d at 295.

Under either Texas's or Delaware's law, the claims at issue in this case do *not* belong to the bankruptcy trustee. That is, both Dakota Labs' theory of liability and its alleged injury are highly particularized. A core element of each of Dakota Labs' claims is fraud. *See infra* pp. 22–25. And Dakota Labs' allegations of fraud are centered on "the personal dealings between [the debtor] and [the] creditor [plaintiff]." *In re Port Neches Fuels, LLC*, 660 B.R. at 187. It alleges that Huron Capital and Grunza directed WD Labs to knowingly or recklessly make multiple misrepresentations, including that (1) WD Labs would increase the volume of its orders by October 2023, (2) Huron Capital would back WD Labs' debts, (3) WD Labs had approved payments on overdue invoices, (4) WD Labs would pay overdue invoices, and (5) WD Labs would comply with the Collaboration Agreement. Compl. ¶¶ 47–52, 84, 92, 94–97.

Applying Delaware law, these claims are "personal" to Dakota Labs and not part of the bankruptcy estate. This is simply not a case in which "the vast majority

15

of the allegations in the complaint" would "affect all creditors equally." *Harrison*, 320 F. Supp. 3d at 622.  Rather, Dakota Labs' claims depend on "specific" and "personal" misrepresentations. *In re CTE 1 LLC*, 2023 WL 5257940, at *22 (Bankr. D.N.J. Aug. 11, 2023) ("[Plaintiffs] undoubtedly had . . . claims [that] . . . were specific and personal to them as the misrepresentations were made to them.").

Nor would Dakota Labs' claims be part of the bankruptcy estate under Texas law.  The Fifth Circuit (applying Texas law) has held that fraud claims that relied on misrepresentations were *not* property of the estate. *In re Educators Grp. Health Tr.*, 25 F.3d at 1284.  There, the plaintiff sued the debtor for "mismanagement" of a trust and "fraud." *Id.* at 1283.  The Fifth Circuit held that the claims for mismanagement alleged an injury to the trust because it was this mismanagement that caused the insolvency, and there was only "derivative harm to the plaintiff[s]" whose "employees" stood to benefit from the trust. *Id.* at 1284–85.  But the situation was different for the fraud claims—the plaintiffs alleged that the defendants "misrepresented to *them* the financial situation of [the trust], and that they materially relied on such misrepresentations," *id.* at 1285, so these claims alleged "a direct injury to the plaintiff[s]," *id.* at 1286.

The claims in this case are not materially distinguishable from the fraud claims the Fifth Circuit examined—Dakota Labs alleges that Defendants directed WD Labs to make misrepresentations to Dakota Labs, which it relied on to its detriment.

Compl. ¶¶ 84–87, 92–99.  These misrepresentations—which were specific to Dakota Labs and caused individualized injury—are crucial to both the alter-ego claims against Huron Capital and the fraud claim against Grunza.[3]

Because each relevant state's law yields the same outcome—the claims are not part of the bankruptcy estate—there is no true conflict, and Michigan law applies. *See CenTra, Inc.*, 538 F.3d at 410 (Michigan law applies when there is a "false conflict"); *Maneotis*, 598 F. Supp. 3d at 649 (false conflict when laws are "different but would produce the same outcome").

### B.   Even if there were a true conflict, Michigan choice-of-law rules require that Michigan law applies.

Even were there a true conflict, Michigan law would apply under Michigan's choice-of law rules, and the claims in this case would not be a part of the estate. Whether a cause of action is "available to the debtor, and thus constitutes 'property of the estate,' is determined by state law."  *In re RCS Engineered Prods.*, 102 F.3d at 225.  And because federal courts apply choice-of-law rules of the forum state,

---

[3] That some of these statements were made by WD Labs, not directly by Huron Capital or Grunza, who made these misrepresentations, does not change this analysis.  Under Texas law, the fact that "injury to [Dakota Labs] flowed through [WD Labs] *actions*—allegedly taken at [Defendants' direction]—" does not change the fact that the injury is specific to Dakota Labs, not all creditors.  *In re Buccaneer Res., LLC*, 912 F.3d at 294 (emphasis added) ("[T]here is no reason why the estate should recover for a third party's tortious conduct that did not injure the bankrupt company.").

Michigan choice-of-law rules apply. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

Michigan law is clear that the choice-of-law analysis for alter-ego claims depends on which "state [has] the greatest interest in and connection to the claims in the lawsuit." *Nieto v. Unitron, LP*, 2006 WL 2255435, at *6 (E.D. Mich. Aug. 7, 2006). In other words, "when the rights of third parties external to the corporation are at issue . . . , the law that governs the alter ego issue will be that of the state with the 'most significant relationship' to the lawsuit." *Id.*

*Nieto* involved facts squarely analogous to those here. The plaintiffs brought claims against an alter ego alleging that a controlled entity violated a collective bargaining agreement. *Id.* at *1. After holding that a "most significant relationship test" applies, the court found that Michigan law applied because the claims arose out of the plaintiffs' employment at a Michigan plant, pursuant an agreement negotiated in Michigan, where the plaintiffs were Michigan residents. *Id.* at *6. The court concluded that Michigan law had the most significant relationship even though the defendant (and the debtor entity) were Texas companies arguing that Texas law applied. *Id.* at *2.

Like *Nieto*, this case involves alter-ego claims and triggers the "most significant relationship" test. As in *Nieto*, Dakota Labs has sued a non-debtor third party based on breach of an agreement, when the debtor is formally distinct from the

non-debtor entity.  And, as in *Nieto*, Michigan has the most significant relationship with the relevant issues.  Dakota Labs' alter-ego claims arise from Huron Capital's alleged fraud *in Michigan*.  Huron Capital—the organization against whom veil-piercing is sought—is organized and has its principal place of business *in Michigan*.  Compl. ¶ 7.  The Complaint alleges that Huron Capital acted from its offices *in Michigan* to harm Dakota Labs as described in this Complaint. *Id.* ¶ 10.  And although Grunza is alleged to be a citizen of Texas, none of the alleged misrepresentations came from Texas.

If anything, Michigan's interest is stronger here than in *Nieto*.  *Nieto* involved a Texas citizen arguing that Texas law applies; here, Defendants argue that Delaware law applies, and yet neither defendant is a Delaware citizen.  Mot. to Dismiss at 11 n.7.  Because the alleged fraudulent conduct underlying the alter-ego claims took place in Michigan, not Texas or Delaware, and because Huron Capital is a citizen of Michigan, it is the state that has the most significant relationship to this lawsuit.  *See Nieto*, 2006 WL 2255435, at *6 (holding Michigan had the most significant relationship because the claims arose out of employment in Michigan, from a contract negotiated in Michigan, with a union headquartered in Michigan).

Additionally, as the Court's order directing supplemental briefing noted, the presumption is that Michigan law applies, and another state's law will apply only if there is a "rational reason" to displace Michigan law. *Sutherland v. Kennington*

19

*Truck Serv., Ltd.*, 562 N.W.2d 466, 471 (Mich. 1997).  There would be nothing rational about displacing Michigan law in this circumstance.  As one court in this district has explained, "it would be illogical to suggest" that Michigan law would not apply when the "controlled entity" breached the terms of its agreement that a Michigan alter ego "sought to shirk via the [controlled entity's] bankruptcy."  *CH Holding Co. v. Miller Parking Co.*, 903 F. Supp. 2d 551, 559 (E.D. Mich. 2012) (describing *Nieto*).[4]  Here, Michigan has a clear interest in applying its law given that Huron Capital (a Michigan citizen) is alleged to have "sought to shirk" WD Labs' responsibilities through bankruptcy.

---

[4] Defendants' argument that the debtor's state of incorporation controls relies on decisions that do not apply Michigan choice-of-law rules. *See* Mot. to Dismiss at 11 n.7 (citing *Murray v. Miner*, 876 F. Supp. 512, 516 (S.D.N.Y. 1995), which applied New York choice-of-law rules); Reply at 2 (citing four cases, none of which apply Michigan choice-of-law rules).  And although some district courts in the Sixth Circuit that have held that the "law of the state of incorporation" applies to whether the debtor would have a veil-piercing claim, *none* of those cases considered Michigan choice of law rules.  *NetJets Aviation, Inc. v. Perlman*, 2022 WL 17741063, at *8 (S.D. Ohio Dec. 16, 2022) ("*Ohio law* directs courts to apply 'the law of the state of incorporation when determining issues of veil-piercing.'" (emphasis added)); *MA Equip. Leasing I LLC v. Tilton*, 2010 WL 11538520, at *8 (S.D. Ohio Aug. 19, 2010); *Days Inn Worldwide, Inc. v. Sai Baba, Inc.*, 300 F. Supp. 2d 583, 592 n.3 (N.D. Ohio 2004); *Plaskon Elec. Materials v. Allied Signal*, 904 F. Supp. 644, 656 (N.D. Ohio 1995); *United States v. Daugherty*, 599 F. Supp. 671, 673 (E.D. Tenn. 1984).  Because it is the forum state's choice-of-law rules that control, *Klaxon Co.*, 313 U.S. at 491, this Court must apply the "most significant relationship" test, consistent with Michigan's choice-of-law rules.

In sum, the Court should not dismiss the alter-ego claims because either (1) there is no true conflict or (2) Michigan choice-of-law rules would choose Michigan law, which holds that alter-ego claims are not part of the bankruptcy estate. *In re RCS Engineered Prods.*, 102 F.3d at 226.

## IV.   Michigan law applies to the merits of each claim.

### A.   Defendants have waived any challenge to the application of Michigan law to the merits.

As discussed above, Defendants have waived any argument that Michigan law does not apply to the merits, stating expressly that they did "not dispute" the application of Michigan law to the merits and repeatedly relying on Michigan law in their merits arguments.  *See supra* p. 12.  Defendants may not "reverse course now."  *D.O.N.C.*, 2022 WL 138643, at *2.  Michigan law applies to the merits of each claim.

### B.   Even if Defendants did not waive the choice-of-law issue, there is no true conflict on alter-ego liability or the breach of contract or fraud in the inducement claims.

Even setting aside Defendants' accession to Michigan law, and although there are some small differences in Michigan, Delaware, and Texas law on each claim's elements, the various states' laws would yield the same outcome in this case.  There is thus no true conflict, and the Court should apply Michigan law.  *See CenTra, Inc.*, 538 F.3d at 410.

21

### 1.    Alter ego.

To determine whether a corporation is an alter ego, each relevant state asks whether (1) the corporate entity had insufficient separateness from the other entity and (2) there was some level of fraud, injustice, or inequity resulting from disregarding the separateness of the corporate entity.[5]

On the first element, the three states generally look to the same set of factors, including failure to observe corporate formalities and undercapitalization, [6] so it is highly unlikely applying a different state's law will result in a different outcome on that element.

---

[5] *See EPLET, LLC v. DTE Pontiac N., LLC*, 984 F.3d 493, 499 (6th Cir. 2021) (**Michigan law**) (holding that veil-piercing requires "(1) the corporate entity was a mere instrumentality of another entity or individual; (2) the corporate entity was used to commit a fraud or wrong; and (3) the plaintiff suffered an unjust loss"); *Harrison*, 320 F. Supp. 3d at 619 (**Delaware law**) ("[An] alter ego claim has two elements: (1) have the two companies . . . functioned as a single entity and thus should be treated as such, and (2) has this corporate structure caused fraud, injustice, or unfairness?"); *Plan B Holdings, LLC v. RSLLP*, 681 S.W.3d 443, 461 (Tex. App. 2023) (**Texas law**) (maintaining that veil-piercing requires plaintiff to show "(1) that the entity on which it seeks to impose liability is the alter ego of the debtor, and (2) that the corporate fiction was used for an illegitimate purpose, that is, to perpetrate an actual fraud on the plaintiff for the defendant's direct personal benefit").

[6] *Glenn v. TPI Petrol., Inc.*, 305 Mich. App. 698, 716 (Mich. Ct. App. 2014) (setting forth factors under Michigan law); *Compagnie des Grands Hôtels d'Afrique S.A. v. Starwood Capital Grp. Glob. I LLC*, 2019 WL 148454, at *3 (D. Del. Jan. 9, 2019) (setting forth similar factors under Delaware law); *Doyle v. Kontemporary Builders, Inc.*, 370 S.W.3d 448, 458 (Tex. App. 2012) (setting forth similar factors under Texas law).

On the second element, although Michigan law and Delaware law require a "fraud or wrong" (Michigan) or "fraud, injustice, or unfairness" (Delaware), while Texas requires "actual fraud on the plaintiff for the defendant's direct personal benefit," *see supra* p. 22 n.5, Texas courts have clarified that "actual fraud means conduct involving either dishonesty or purpose or intent to deceive," not the elements of tort fraud, *Latham v. Burgher*, 320 S.W.3d 602, 607 (Tex. App. 2010). Texas's requirement of "actual fraud" thus is not meaningfully different than the other two states. And since Dakota Labs alleges that Huron Capital and Grunza knowingly or recklessly directed WD Labs to make misrepresentations, *see, e.g.*, Compl. ¶ 84, it is unlikely differences in state law will result in a different outcome.

## 2. Breach of Contract

Michigan's, Delaware's, and Texas's law are highly similar as to breach of contract, each requiring (1) a contract, (2) a breach of that contract by the other party, and (3) resulting damage to the plaintiff.[7] Texas includes an additional element

---

[7] *Woodland Condos. Homeowners Ass'n v. Fannie Mae*, 2019 WL 982924, at *6 (Mich. Ct. App. Feb. 28, 2019) (**Michigan law**) ("To prevail on a claim for breach of contract, a plaintiff must prove the following elements: (1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach."); *Greenstar, LLC v. Heller*, 814 F. Supp. 2d 444, 450 (D. Del. 2011) (**Delaware law**) ("[T]he elements of a breach of contract claim are: (1) a contractual obligation; (2) a breach of that obligation by the defendant; and (3) resulting damage to the plaintiffs."); *Thoede v. Wortham*, 2018 WL 3342692, at *11 (Tex. App. July 9, 2018) (**Texas law**) ("A breach of contract claim consists of the following elements: (i) a valid contract; (ii) plaintiff's performance; (iii) defendant's breach; and (iv) damage to the plaintiff resulting from the breach.").

requiring that a plaintiff prove that it substantially performed. *Camp Roofing Ltd. v. Park Side Villas I, LLC*, 2011 WL 5829558, at \*2 (Tex. App. Nov. 2, 2011). But Delaware requires a showing of substantial performance to recover damages, and Michigan allows for a defense based on a plaintiff not substantially performing. *Emmett Hickman Co. v. Emilio Capano Dev., Inc.*, 251 A.2d 571, 573 (Del. Super. Ct. 1969) (explaining that, to recover damages, a plaintiff must demonstrate substantial compliance with all the provisions of the contract); *Insight Teleservices, Inc. v. Zip Mail Servs.*, 2014 WL 7012653, at \*7 (E.D. Mich. Dec. 11, 2014) (describing defense under Michigan law based on plaintiff "substantial[ly] breaching [the] contract").

Given the similarity between the various states' law, and since the complaint alleges Dakota Labs' performance, any small differences in state law are highly unlikely to affect the outcome of this case. *See* Compl. ¶¶ 34–43 (allegations that Dakota Labs performed in accordance with contract).

### 3.    Fraud in the inducement

Michigan, Delaware, and Texas have nearly the same elements regarding fraud in the inducement, requiring (1) a material misrepresentation, (2) made with knowledge of its falsity or asserted without knowledge of its truth, (3) made with the intention that it should be acted on by the other party, (4) which the other party relied

on, and (5) which caused injury.[8]  There are some descriptive differences between the states.  Michigan includes materiality and falsity as separate elements, while Delaware and Texas include them both in the first element.  But these are not substantive.  Hence, the outcome under each of those state's laws on fraud in the inducement would be the same.

## CONCLUSION

For those reasons, the Court should not dismiss this case under the doctrine of *forum non conveniens*.  The Court should also conclude that the alter-ego claims are not part of the bankruptcy estate and that Michigan law applies to the claims.

---

[8] *Metro Mortg. Invs., LLC v. Riley*, 2017 WL 3397453, at *2 (Mich. Ct. App. Aug. 8, 2017) (**Michigan law**) ("[A] claim of fraud in the inducement requires proof of six elements: (1) a material representation by the defendant; (2) that representation was false; (3) when the false, material representation was made, the defendant knew it was false or mak[d] it recklessly without knowledge of whether it was true or false; (4) the defendant intended the plaintiff to act upon the representation; (5) the plaintiff relied upon the representation; and (6) the plaintiff suffered damage as a result."); *Jan'e Colahar El v. Davis*, 2013 WL 1914233, at *2 (D. Del. May 7, 2013) (**Delaware law**) (To state a claim for fraudulent inducement or fraud, a plaintiff must allege: "(1) a false representation of material fact; (2) the defendant's knowledge of or belief as to the falsity of the representation or the defendant's reckless indifference to the truth of the representation; (3) the defendant's intent to induce the plaintiff to act or refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance."); *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018) (**Texas law**) ("Fraudulent inducement is a species of common-law fraud that shares the same basic elements: (1) a material misrepresentation, (2) made with knowledge of its falsity or asserted without knowledge of its truth, (3) made with the intention that it should be acted on by the other party, (4) which the other party relied on and (5) which caused injury.").

Dated: February 20, 2025

Respectfully submitted,

WINSTON & STRAWN LLP

*/s/ Ronald Y. Rothstein*
Ronald Y. Rothstein
RRothste@winston.com
35 West Wacker Drive
Chicago, Illinois 60601
Telephone: 312-558-7464

*Attorneys for Dakota Labs Inc.*