UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAKOTA LABS INC.,

             Plaintiff,

vs.                                    Case No. 2:24-cv-10922
                                    Hon. Susan K. DeClercq

HURON CAPITAL PARTNERS LLC
and MICHAEL GRUNZA III,

             Defendants.

_____/

**DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFF DAKOTA LABS INC.'S COMPLAINT
UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) AND 9(b)**

# **TABLE OF CONTENTS**

I.    RELEVANT FACTUAL BACKGROUND ....................................................1

II.    ARGUMENT.........................................................................................2

    1.    Does the contract's forum-selection clause apply to the claims
in this matter? In other words, should this Court dismiss for
*forum non conveniens?*
Defendants' Response:  No. ...................................................2

    2.    If the contract's forum-selection clause does not require
dismissal of Plaintiff's claims, then does its choice-of-law
clause selecting the laws of Canada and British Columbia apply
to the contract claims in this matter?
Defendants' Response:  No. ...................................................6

    3.    If the contract's choice-of-law clause does *not* control, then for
each issue below—applying Michigan's choice-of-law rules—
indicate (1) whether a true conflict exists, and if so, (2) which
state's law this Court should apply to determine:
    a.    whether alter ego claims belong to the bankruptcy trustee;
    b.    the elements of alter ego liability;
    c.    the elements of breach of contract; and
    d.    the elements of fraud in the inducement. ...................................7

    Defendants' Responses:

    a.    Whether alter ego claims belong to the bankruptcy trustee:
A true conflict exists; Delaware law should apply. ...................7

    b.    The elements of alter ego liability:  No true conflict exists;
Michigan law should apply.......................................................17

    c.    The elements of breach of contract:
No true conflict exists; Michigan law should apply. ................18

    d.    The elements of fraud in the inducement: No true conflict
exists; Michigan law should apply. ..........................................18

III.    CONCLUSION.............................................................................19

i

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

*In re Advanced Packaging & Prod. Co.*,
  426 B.R. 806 (C.D. Cal. 2010) ...............................................................13

*AtriCure, Inc. v. Meng*,
  12 F.4th 516 (6th Cir. 2021) ..............................................7, 17, 18, 19

*Chrysler Corp. v. Ford Motor Co.*,
  972 F. Supp. 1097 (E.D. Mich. 1997) ...................................11, 12, 13

*In re Chrysler Pacifica Fire Recall Prods. Liab. Litig.*,
  715 F. Supp. 3d 1003 (E.D. Mich. 2024) ...........................................5

*In re Emoral, Inc.*,
  740 F.3d 875 (3d Cir. 2014) ................................................................9

*Firexo, Inc. v. Firexo Grp. Ltd.*,
  99 F.4th 304 (6th Cir. 2024) ...........................................................3, 6

*Gen. Star Nat. Ins. Co. v. Administratia Asigurarilor de Stat*,
  289 F.3d 434 (6th Cir. 2002) ..............................................................5

*Hall v. Gen. Motors Corp.*,
  229 Mich. App. 580; 582 N.W.2d 866 (1998) ...........................15, 17

*Harrison v. Soroof Int'l, Inc.*,
  320 F. Supp. 3d 602 (D. Del. 2018)..................................................8, 9

*Harshaw v. Bethany Christian Servs.*,
  714 F. Supp. 2d 751 (W.D. Mich. 2010) ..........................................16

*Hess v. Positive Energy Fleet, LLC*,
  571 F. Supp. 3d 844 (E.D. Mich. 2021) ............................................5

*Holcomb v. Pilot Freight Carriers, Inc.*,
  120 B.R. 35 (M.D.N.C. 1990) ..........................................................13

*Kalb, Voorhis & Co. v. Am. Fin. Corp.*,
  8 F.3d 130 (2d Cir. 1993) ...........................................................10, 13

*LePine v. Rosenbaum*,
   2020 WL 2836275 (E.D. Mich. June 1, 2020) ...................................................10

*In re Maxus Energy Corp.*,
   571 B.R. 650 (Bankr. D. Del. 2017) ....................................................................8

*Lim v. Miller Parking Co.*,
   560 B.R. 688 (E.D. Mich. 2016) .........................................................................15

*MoneyForLawsuits V LP v. Rowe*,
   2012 WL 1068171 (E.D. Mich. Jan. 23, 2012) ...............................................5, 6

*Murray v. Miner*,
   876 F. Supp. 512 (S.D.N.Y. 1995) .....................................................................13

*Nieto v. Unitron, LP*,
   2006 WL 2255435 (E.D. Mich. Aug. 7, 2006)................................11, 12, 13, 14

*In re RCS Engineered Prods. Co., Inc.*,
   102 F.3d 223 (6th Cir. 1996) ................................................................................8

*RDM Holdings, LTD v. Cont'l Plastics Co.*,
   281 Mich. App. 678; 762 N.W.2d 529 (2008) ...............................................8, 10

*Regions Bank v. JP Realty Partners, Ltd.*,
   912 F. Supp. 2d 604 (M.D. Tenn. 2012) .........................................12, 13, 14, 15

*Sutherland v. Kennington Truck Serv., Ltd.*,
   454 Mich. 274; 562 N.W.2d 466 (1997) ............................................................15

*Univ. Physician Grp. v. AAUP-AFT, Loc. 6075, AFL-CIO*,
   2013 WL 5785873 (E.D. Mich. Oct. 28, 2013)....................................................4

Pursuant to the Court's Order Directing Supplemental Briefing (ECF No. 25), Defendants Huron Capital Partners LLC ("Huron LLC") and Michael Grunza III ("Mr. Grunza," and together with Huron LLC, the "Defendants"), by their undersigned legal counsel, submit the following responses to the Court's forum-selection and choice-of-law inquiries.

## I.      RELEVANT FACTUAL BACKGROUND

Plaintiff Dakota Labs Inc. ("Plaintiff") and non-party M7D Corporation d/b/a WD Lab Grown Diamonds ("M7D") entered a Collaboration Agreement on September 1, 2022.  (Compl. ¶ 22 & Ex. A (the "Agreement") at 1.)   Neither Huron LLC nor Mr. Grunza is a party to the Agreement.   Nonetheless, the Agreement is the subject of Plaintiff's three claims against Huron LLC and Mr. Grunza for breach of contract and fraud in the inducement.

The Agreement contains an arbitration provision, forum-selection clause, and choice-of-law provision.  *See* (Agreement §§ 8.2, 10.8).  The arbitration provision states that "[a]ll disputes arising out of or in connection with th[e] Agreement, or in respect of any defined legal relationship associated therewith or derived therefrom, shall be referred to and finally resolved by arbitration" in British Columbia, Canada. (*Id.* at § 8.2.)  This provision contains one carveout for judicial dispute resolution, permitting a contracting party to "appl[y] to a Court of competent jurisdiction for an order enjoining any activity by the other Party pending the hearing of the

arbitration." (*Id.*)

The Agreement's forum-selection clause, in turn, designates the Courts of the Province of British Columbia as Plaintiff's and M7D's chosen forum. (Agreement § 10.8.) This provision is expressly made "[s]ubject to the arbitration provision set out in Article 8[.]" (*Id.*)

Finally, the choice-of-law clause provides that the Agreement shall be "construed in accordance with the domestic laws of the Province of British Columbia and the laws of Canada applicable therein, excluding its conflict of laws rules." (*Id.*)

In July 2023, Plaintiff filed an arbitration petition against M7D pursuant to Article 8 of the Agreement. (Compl. ¶ 56.) Plaintiff sought alleged outstanding invoices, equipment and labor costs, lost profits, and reliance damages, with interest, from M7D—the same damages Plaintiff now seeks from Defendants. (*Id.*) Plaintiff's Complaint does not allege whether or how this arbitration proceeding concluded. Nor does it allege whether Plaintiff sought to enjoin any activity by M7D in the Courts of British Columbia pending the hearing of the arbitration pursuant to Sections 8.2 and 10.8 of the Agreement.

Less than one year later, Plaintiff filed the present action in this Court.

## II.   ARGUMENT

**1.    Does the contract's forum-selection clause apply to the claims in this matter? In other words, should this Court dismiss for *forum non conveniens?***

2

**Defendants' Response:  No.**

Neither Huron LLC nor Mr. Grunza is a party to the Agreement between Plaintiff and M7D.  *See* (Compl. ¶ 22; Agreement at 1).  Because Defendants are not parties to the Agreement, its arbitration provision and forum-selection clause may not be enforced against them.  *Firexo, Inc. v. Firexo Grp. Ltd.*, 99 F.4th 304, 311 (6th Cir. 2024) ("It is axiomatic that, typically, only parties to a contract are bound to its terms.") (citation and internal quotation marks omitted).

Plaintiff's alter ego allegations against Huron LLC[1] do not change this result.  First, for the reasons explained in Defendants' Motion to Dismiss briefing, Plaintiffs' alter ego claims fail as a matter of law.  *See* (ECF No. 16, PageID.89-PageID.94).  The meritlessness of these claims is in fact underscored by Plaintiff's decision to sue Huron LLC in the Eastern District of Michigan.  If Plaintiff believed, as it alleges, that Huron LLC is bound by the Agreement as an alter ego of M7D, it would have certainly filed for arbitration against Huron LLC (most likely in 2023, with its petition against M7D) pursuant to the Agreement's arbitration provision.  Or, Plaintiff would have at least sued Huron LLC in British Columbia pursuant to the Agreement's forum-selection clause.  Plaintiff did not do so.  Instead, it sued

---

[1]      Plaintiff does not allege that Mr. Grunza is an alter ego of M7D.  Plaintiff alleges no other theory under which Mr. Grunza could be bound by the Agreement's arbitration, forum-selection, or choice-of-law provisions.  Tellingly, Plaintiff did not sue Mr. Grunza for breach of contract.

Huron LLC in this Court, overtly cherry-picking contract terms to try to enforce against Huron LLC while ignoring the contract's arbitration and forum-selection clauses.

Second, even if the Complaint stated plausible alter ego claims against Huron LLC—it does not—the Agreement's arbitration provision would not bind Huron LLC unless and until this Court first determined that Huron LLC is M7D's alter ego. This is because the threshold question of whether Huron LLC is bound by the arbitration provision is an issue for judicial determination. *See, e.g.*, *Univ. Physician Grp. v. AAUP-AFT, Loc. 6075, AFL-CIO*, 2013 WL 5785873, at *4 (E.D. Mich. Oct. 28, 2013) (". . . [A] gateway dispute about whether the parties are bound by a given arbitration clause raises a [sic] 'questions of arbitrability' for a court to decide.") (citation omitted). Importantly, the Agreement does not contain a delegation clause assigning questions of arbitrability to the arbitrator to decide in the first instance.

As for the Agreement's forum-selection clause, that clause applies only in the narrow circumstance in which, "pending the hearing of [an] arbitration," one party "appl[ies] . . . for an order enjoining any activity by the other Party" in a court of competent jurisdiction. (Agreement §§ 8.2, 10.8.) Plaintiff is not seeking an order enjoining activity by any party, let alone a party to the Agreement.

Third, regardless of whether the arbitration and forum-selection clauses

arguably bind Defendants, the parties have already waived[2] the application of these provisions through their litigation choices to date. Plaintiff filed suit in this District. Defendants responded to the Complaint with a motion to dismiss on the merits. Courts within the Sixth Circuit routinely find that parties waive arbitration and forum-selection clauses through similar litigation choices. *See, e.g.*, *Gen. Star Nat. Ins. Co. v. Administratia Asigurarilor de Stat*, 289 F.3d 434, 438 (6th Cir. 2002) (". . . [A]n agreement to arbitrate may be waived by the actions of a party which are completely inconsistent with any reliance thereon.") (citation omitted); *In re Chrysler Pacifica Fire Recall Prods. Liab. Litig.*, 715 F. Supp. 3d 1003, 1008 (E.D. Mich. 2024) (observing that many courts have held that "a party waives the right to arbitrate by seeking a decision on the merits of claim [sic] from a district court"); *MoneyForLawsuits V LP v. Rowe*, 2012 WL 1068171, at *5 (E.D. Mich. Jan. 23, 2012) (finding that both parties by their conduct waived enforcement of a forum-selection clause: "Plaintiff has done so by filing its suit in this case. Defendants have done so by failing to raise the issue in their Answers . . . or in a motion to dismiss or transfer the case on the basis of the forum selection clause.") (citation omitted). Neither the Agreement's arbitration provision nor its forum-selection clause deprives this Court of otherwise valid jurisdiction. *See Hess v. Positive Energy*

---

[2] By introducing the concept of waiver in the alternative to the preceding arguments, Defendants in no way concede that they are or were bound by the Agreement's terms.

*Fleet, LLC*, 571 F. Supp. 3d 844, 846 (E.D. Mich. 2021) (noting that "an arbitration clause does not implicate subject matter jurisdiction," and this distinction is "fortified by the reality that parties can waive arbitration"); *MoneyForLawsuits*, 2012 WL 1068171, at *5 ("A forum selection clause does not oust a court of subject matter jurisdiction. . . . [D]istrict courts should not, as a matter of general practice, dismiss *sua sponte* either for improper venue or for failure to follow a forum selection clause.").

For these reasons, the Agreement's arbitration and forum-selection clauses do not apply to Plaintiff's claims. The Court should not dismiss for *forum non conveniens*.

> **2.** **If the contract's forum-selection clause does not require dismissal of Plaintiff's claims, then does its choice-of-law clause selecting the laws of Canada and British Columbia apply to the contract claims in this matter?**
>
> **Defendants' Response: No.**

Again, neither Huron LLC nor Mr. Grunza is a party to the Collaboration Agreement between Plaintiff and M7D. Because Defendants are not parties to the Agreement, its choice-of-law clause may not be enforced against them. *Firexo*, 99 F.4th at 311.

Moreover, if Plaintiff believed that the Agreement is binding on Defendants, under an alter ego theory of liability or otherwise, it presumably would have asked the Court to apply the law of British Columbia, Canada, to its claims. Plaintiff did

6

not do so.  Instead, it defended its claims under Michigan state law.  *See generally* (ECF No. 20, PageID.209-PageID.224).  As a result of Plaintiff's litigation choices, this Court may decline to enforce the Agreement's choice-of-law provision. *AtriCure, Inc. v. Meng*, 12 F.4th 516, 525 (6th Cir. 2021) ("The parties' litigation choices allow [courts] to avoid [a] choice-of-law issue.").

For these reasons, Defendants submit that the Agreement's choice-of-law clause does not apply to the contract claims in this matter.

3.   **If the contract's choice-of-law clause does *not* control, then for each issue below—applying Michigan's choice-of-law rules—indicate (1) whether a true conflict exists, and if so, (2) which state's law this Court should apply to determine:**
      a.   **whether alter ego claims belong to the bankruptcy trustee;**
      b.   **the elements of alter ego liability;**
      c.   **the elements of breach of contract; and**
      d.   **the elements of fraud in the inducement.**

**Defendants' Responses:**

      a.   **Whether alter ego claims belong to the bankruptcy trustee: A true conflict exists; Delaware law should apply.**

Defendants ask this Court to resolve a threshold question before reaching the merits of Plaintiff's alter ego claims against Huron LLC: may Plaintiff bring alter ego claims against Huron LLC to try to recover M7D's debts, or do alter ego claims belong exclusively to M7D's bankruptcy Trustee?  Defendants ask the Court to apply Delaware law to this question.  Plaintiffs ask the Court to apply Michigan law. For the reasons that follow, Delaware law applies, and Plaintiff's alter ego claims

must be dismissed because Plaintiff lacks standing to bring them.

1.    A True Conflict Exists Between Michigan and Delaware Law

Under Michigan law, a subsidiary may not bring an alter ego claim against its parent company. *RDM Holdings, LTD v. Cont'l Plastics Co.*, 281 Mich. App. 678, 705; 762 N.W.2d 529, 545 (2008) (citing *In re RCS Engineered Prods. Co., Inc.*, 102 F.3d 223, 226 (6th Cir. 1996)).  As a result, neither a debtor nor the trustee of the debtor's estate in bankruptcy may assert alter ego claims to pierce the debtor's own corporate veil. *Id.* at 704-705.

In contrast, under Delaware law, alter ego claims are properly considered property of a debtor's bankruptcy estate; the trustee in bankruptcy may assert alter ego claims to pierce the debtor's corporate veil. *In re Maxus Energy Corp.*, 571 B.R. 650, 658 (Bankr. D. Del. 2017).  In such instances, individual creditors lack standing to assert alter ego claims. *See id.* at 656; *Harrison v. Soroof Int'l, Inc.*, 320 F. Supp. 3d 602, 627 (D. Del. 2018).  Those claims are instead property of the bankruptcy estate and belong exclusively to the bankruptcy trustee. *Id.*

Importantly, Delaware law confers standing on the debtor's trustee in bankruptcy where, as here, "the factual allegations that would establish [the] alter ego cause of action" are not "'unique' to [the plaintiff], as compared to other creditors."[3]  *Harrison*, 320 F. Supp. 3d at 619.  In assessing whether an alter ego

---

[3]    Plaintiff did not argue in its Opposition to Defendants' Motion to Dismiss that

8

claim is unique to one plaintiff or general to other creditors, Delaware courts "focus[ ] on [the] alter ego claim itself—not [the plaintiff's] underlying claim," such as breach of contract or fraud. *Id.* (citing *In re Emoral, Inc.*, 740 F.3d 875, 879 (3d Cir. 2014)).  Here, Plaintiff does not allege any facts in support of its alter ego theory that are unique to Plaintiff as compared to other creditors.  Plaintiff's "mere instrumentality" allegations—that M7D was a majority-owned subsidiary of Huron LLC, that five of six M7D directors were partners or principals of Huron LLC, that M7D was undercapitalized, and that Mr. Grunza contributed to Huron LLC's control of M7D —"would not differ depending on which . . . creditor was bringing an alter ego claim."  *Id.*  Plaintiff's alter ego allegations that Huron LLC used M7D to commit a "fraud" or "wrong" are not unique to Plaintiff, either.  M7D's other creditors could equally allege (albeit baselessly) that Huron LLC caused M7D to declare bankruptcy and funnel its assets into another alleged alter ego to avoid M7D's debts.  (Compl. ¶¶ 54-63, 80, 89); *see Harrison*, 320 F. Supp. 3d at 619 (creditor's complaint alleged "coordinated acts . . . that not only caused harm to that plaintiff but *also* to other creditors of the subsidiary").

Because Michigan law would permit Plaintiff to bring its alter ego claims in

---

its alter ego claims are not property of M7D's estate because the claims are unique to Plaintiff.  Defendants, meanwhile, have consistently argued that the alter ego claims—if they had any factual basis—are not particularized and could be raised for the "potential benefit of all creditors."  *See* (ECF No. 16, PageID.87).

this Court, while Delaware law would find that the claims belong exclusively to M7D's bankruptcy Trustee, there is a true conflict of laws for this Court to address.

> ### 2. Michigan Courts Have Not Articulated Clear Choice-of-Law Principles to Address the Conflict Presented

It is well settled that if, "under governing state law[,] the debtor could have asserted an alter ego claim to pierce its own corporate veil, that claim constitutes property of the bankrupt estate and can only be asserted by the [bankruptcy] trustee or the debtor-in-possession." *RDM Holdings*, 281 Mich. App. at 703 (quoting *Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993)).  Far less settled, however, are Michigan's choice-of-law principles for determining which state's law governs this question.[4]

As far as Defendants are aware after a reasonable search, no Michigan state court has resolved a conflict of laws as to whether alter ego claims belong to a creditor-plaintiff or bankruptcy trustee.  Two federal district courts within the Sixth Circuit have resolved such a conflict.  These cases are discussed below.

---

[4]    Plaintiff has suggested that because "alter-ego claims are analyzed as tort claims" under Michigan law, a conflict of laws as to the threshold issue—whether alter ego claims belong to a creditor-plaintiff or to the debtor's estate—must also be analyzed under Michigan's choice-of-law principles for tort claims.  (ECF No. 20, PageID.210 (citing *LePine v. Rosenbaum*, 2020 WL 2836275, at *12 (E.D. Mich. June 1, 2020)).)  However, neither *LePine* nor any other Michigan state or federal case reviewed by Defendants makes clear that the threshold question presented here should be analyzed using Michigan's choice-of-law principles for tort claims, simply because conflicts of laws as to substantive alter ego claims are analyzed as such.

a.     *Nieto v. Unitron, LP*

In *Nieto v. Unitron, LP*, 2006 WL 2255435 (E.D. Mich. Aug. 7, 2006), the court considered whether Michigan or Texas law should decide if a putative class of union members, who negotiated a CBA with non-party Unitron Inc., had standing to sue Unitron Inc.'s alleged alter ego after Unitron Inc. filed for bankruptcy and stopped providing health and disability benefits to plaintiffs under the CBA.  2006 WL 2255435, at *1, *4-6.  The court observed that the choice-of-law principles of Michigan, the forum state, apply to the conflicts question.  *Id.* at *5.  It then found that because the question presented was "not a contract dispute," Michigan's choice-of-law principles for contracts did not apply.  *Id.* at *6.  However, it did not articulate whether Michigan's choice-of-law principles for tort disputes (or another category of disputes) applied.  Instead, it turned to the choice-of-law analysis in another district court case, *Chrysler Corporation v. Ford Motor Company*, 972 F. Supp. 1097, 1101 (E.D. Mich. 1997), which it deemed "more on point."  *Id.* at *6.[5]

Applying *Chrysler*, the *Nieto* court opined that "when the rights of third parties external to the corporation are at issue, [t]he state directly affected by the alleged corporate wrongdoing must be allowed to determine the extent to which the

---

[5]     *Chrysler* did not address the question presented here: whether alter ego claims belong to a creditor-plaintiff or the debtor's bankruptcy trustee.  Instead, *Chrysler* considered which state's law determines an alleged successor or alter ego corporation's CERCLA liability for pollution by a non-party.  *Chrysler*, 972 F. Supp. at 1101.

corporate veil may be pierced." *Nieto*, 2006 WL 2255435, at *6 (quoting *Chrysler*, 972 F. Supp. at 1103).  The *Nieto* court determined that Michigan was the state most directly affected by the alleged corporate wrongdoing because "Plaintiffs' claims for lifetime health benefits arise out of their employment at a Michigan plant, pursuant to a CBA negotiated in Michigan, with a union headquartered in Michigan[, and a]ll of the Plaintiffs are Michigan residents, as is their health insurance provider." *Id.*

### b.    *Regions Bank v. JP Realty Partners, Ltd.*

In *Regions Bank v. JP Realty Partners, Ltd.*, the Middle District of Tennessee considered whether Tennessee or Texas law should decide if a commercial lessor could sue a tenant's parent company, under an alter ego theory, after the tenant declared bankruptcy.  *Regions Bank v. JP Realty Partners, Ltd.*, 912 F. Supp. 2d 604, 613-614 (M.D. Tenn. 2012).  Without specifying whether it would apply the choice-of-law rules of Tennessee, the forum state, the court began its analysis by observing that "the default rule is that the law of the state in which a corporate entity was incorporated or formed governs the issue of whether that company's corporate form should be ignored." *Id.* at 614 (citing cases).  The court accordingly applied Tennessee law because the bankrupt debtor was a Tennessee LLC, and the defendants advocating for Texas law did not identify any authority contradicting the "general rule" that the law of the debtor's state of incorporation or formation governs. *Id.* at 615.

As noted in Defendants' briefing in support of their Motion to Dismiss, many courts in addition to *Regions Bank* have applied the law of the state of the debtor's incorporation to determine whether alter ego claims belong to a creditor-plaintiff or bankruptcy trustee. *See* (ECF No. 23, PageID.246 (citing *Murray v. Miner*, 876 F. Supp. 512, 516 (S.D.N.Y. 1995), *aff'd*, 74 F.3d 402 (2d Cir. 1996); *In re Advanced Packaging & Prod. Co.*, 426 B.R. 806, 818-819 & n.81 (C.D. Cal. 2010); *Holcomb v. Pilot Freight Carriers, Inc.*, 120 B.R. 35, 42 (M.D.N.C. 1990))).  *See also Kalb, Voorhis & Co.*, 8 F.3d at 132-133 ("Because a corporation is a creature of state law whose primary purpose is to insulate shareholders from legal liability, the state of incorporation has the greater interest in determining when and if that insulation is to be stripped away.").

### 3.   Delaware Law Governs the Question Presented

Under *Nieto*, *Regions Bank*, and even Michigan's choice-of-law principles for tort disputes, this Court should apply Delaware law to decide whether Plaintiff has standing to assert alter ego claims against Huron LLC.

In *Nieto*, the court reasoned that the law of the "state directly affected by the alleged corporate wrongdoing must be allowed to determine the extent to which the corporate veil may be pierced."  *Nieto*, 2006 WL 2255435, at *6 (quoting *Chrysler*, 972 F. Supp. at 1103).  With this principle in mind, the Court considered that the *Nieto* plaintiffs were Michigan residents with a union headquartered in Michigan,

whose benefits arising out of their employment at a Michigan plant would be paid from a Michigan insurer pursuant to a CBA negotiated in Michigan. *Id.* The Court accordingly chose to apply Michigan law.

In contrast, here, Plaintiff is not a Michigan citizen and does not allege that it incurred damages or suffered any injury in Michigan. *See* (Compl. ¶ 6). Instead, Plaintiff alleges that M7D evaded liability to Plaintiff and other creditors by declaring bankruptcy in Delaware. It further alleges that Huron LLC formed WD Advanced Materials, LLC ("WDAM") in Delaware[6] after the bankruptcy "to continue to profit . . . while using the U.S. Bankruptcy Code to shed [its] liabilities" to Plaintiff and other creditors. (Compl. ¶¶ 57-60.) Michigan has no apparent interest in deciding the extent to which M7D's corporate veil may be pierced under these circumstances. Rather, Delaware is the state directly affected by Huron LLC and M7D's alleged abuse of the Delaware bankruptcy system and Huron LLC's alleged abuse of Delaware state resources to form WDAM at M7D's creditors' expense. For these reasons, under *Nieto*, Delaware law determines whether Plaintiff's alter ego claims belong to Plaintiff or M7D's estate.

Similarly, under *Regions Bank*, Delaware law governs the question presented. *Regions Bank* adopted "the default rule . . . that the law of the state in which [the

---

[6]     *See* Delaware Department of State, Division of Corporations entity profile for WD Advanced Materials, LLC, attached hereto as Exhibit 1.

debtor] entity was incorporated or formed governs the issue of whether that company's corporate form should be ignored." *Regions Bank*, 912 F. Supp. 2d at 614. Applying this straightforward principle, the state law of Delaware, where M7D was incorporated, should govern.

Finally, even if this Court were to apply Michigan's choice-of-law principles for tort claims to the conflict presented—despite that Defendants have not identified case law holding that the application of these principles is appropriate or required— Delaware law would govern. "Under Michigan's choice-of-law rules concerning tort claims, there is a presumption that Michigan law applies unless there is a rational reason to displace it." *Lim v. Miller Parking Co.*, 560 B.R. 688, 705 (E.D. Mich. 2016) (citing *Sutherland v. Kennington Truck Serv., Ltd.*, 454 Mich. 274, 286; 562 N.W.2d 466, 471 (1997)). Courts sitting in Michigan will "use another state's law [only] where the other state has a significant interest and Michigan has only a minimal interest in the matter." *Id.* (quoting *Hall v. Gen. Motors Corp.*, 229 Mich. App. 580, 585; 582 N.W.2d 866, 868 (1998)).

Here, there is a rational reason to displace Michigan law with Delaware law. Delaware has a significant interest in determining whether claims that require piercing the veil of a Delaware corporation, who filed for bankruptcy in Delaware, belong to a Delaware Trustee to raise for the potential benefit of creditors in that Delaware proceeding. As explained above, Delaware is also most directly affected

by M7D's alleged abuse of the Delaware bankruptcy system and Huron LLC's formation of WDAM as a Delaware LLC, allegedly at M7D's creditors' expense.

On the other hand, Michigan's interest in deciding the question presented is minimal.  Plaintiff is not a Michigan citizen and does not allege that it suffered injury in Michigan.  Thus, Plaintiff is not entitled to the typical strong presumption that Michigan law applies.  *See Harshaw v. Bethany Christian Servs.,* 714 F. Supp. 2d 751, 761 (W.D. Mich. 2010) ("[W]hen the plaintiff is not a Michigan resident, [Michigan's] interests"—namely, "protecting its residents from injury and providing just compensation to its citizens"—"are absent and the analysis is no longer so strongly presumptively tilted in favor of applying [Michigan's] substantive law.").

Plaintiff may still argue that Michigan has an interest in the question presented by pointing to its conclusory allegation that Huron LLC "us[ed] [M7D] as its instrumentality from its offices in [Michigan] to harm [Plaintiff]."  (Compl. ¶ 10.) However, the Complaint does not allege any facts that tie Huron LLC's alleged control of M7D to Michigan.  On the contrary, accepting Plaintiff's factual allegations as true, the "fraud" or "wrong" underpinning Plaintiff's alter ego claims occurred in Delaware.  *See* (Compl. ¶¶ 80, 89 (alleging that Huron LLC caused M7D to declare bankruptcy (in Delaware) before forming WDAM (in Delaware)).

Plaintiff may also cite the fact that Huron LLC is a Michigan company.  But this not enough to establish that Michigan has more than minimal interest in the

16

question presented.  Where "Michigan is merely the forum state and situs of defendant's headquarters[, s]uch minimal interests are insufficient to justify . . . result-oriented forum shopping[.]"  *Hall*, 229 Mich. App. at 587 (citation omitted).  Plaintiff should not be rewarded with the application of favorable Michigan law simply because it filed suit in Huron LLC's home state (ignoring arbitration and forum-selection clauses in a contract it alleges is otherwise binding), given Delaware's significant interest in resolving the question presented.

For the foregoing reasons, this Court should apply Delaware law to decide Plaintiff's standing to bring alter ego claims against Huron LLC.  Under Delaware law, Plaintiff's alter ego claims belong to M7D's Trustee, not Plaintiff.  Counts I and II of the Complaint should be dismissed on this basis.

> **b.   The elements of alter ego liability:**
> **No true conflict exists; Michigan law should apply.**

Defendants have not identified a true conflict between the laws of the states with potential interest in Huron LLC's alleged alter ego liability—Michigan and Delaware—as to the substantive elements of alter ego liability.  Both Plaintiff (in spite of the Agreement's choice-of-law provision) and Defendants asked the Court to apply Michigan law to the substantive elements of alter ego liability in their Motion to Dismiss briefing.

Defendants accordingly ask this Court to apply Michigan law to the substantive alter ego analysis.  *See AtriCure, Inc. v. Meng*, 12 F.4th at 525.

### c. The elements of breach of contract:
No true conflict exists; Michigan law should apply.

Defendants have not identified a true conflict between the laws of the state and province with potential interest in resolving Plaintiff's breach of contract claim—Michigan and British Columbia, Canada—as to the substantive elements of breach of contract.  Neither party has asked the Court to apply Canadian law to the elements of Plaintiff's breach of contract claim.  Again, if Plaintiff believed that Huron LLC is bound by the Agreement, it presumably would have alleged and argued that Huron LLC is bound by its choice-of-law provision.  But Plaintiff did not do so.

Defendants accordingly ask the Court to apply Michigan law to the substantive breach of contract analysis.  *AtriCure, Inc. v. Meng*, 12 F.4th at 525.

### d. The elements of fraud in the inducement:
No true conflict exists; Michigan law should apply.

Defendants have not identified a true conflict between the laws of the states and province with potential interest in resolving Plaintiff's fraud in the inducement claims—Michigan; British Columbia, Canada; and Texas—as to the substantive elements of fraud in the inducement.  Both Plaintiff (in spite of the Agreement's choice-of-law provision) and Defendants asked the Court to apply Michigan law to the elements of fraud in the inducement in their Motion to Dismiss briefing.

Defendants accordingly ask the Court to apply Michigan law to the

substantive fraud in the inducement analysis.  *See AtriCure, Inc. v. Meng*, 12 F.4th at 525.

## III.    CONCLUSION

Defendants respectfully submit these responses to the Court's forum-selection and choice-of-law inquiries.  Defendants renew their request that the Court dismiss each of Plaintiff's claims with prejudice under Federal Rules of Civil Procedure 12(b)(6) and 9(b).

Dated: February 20, 2025                    Respectfully submitted,

                                            By:  /s/ *Nick Gorga*
                                                Nick Gorga (P72297)
                                                Shannon C. Duggan (P83211)
                                                Jalen R. Farmer (P86859)
                                            HONIGMAN LLP
                                            660 Woodward Avenue
                                            2290 First National Building
                                            Detroit, MI 48226
                                            (313) 465-7640
                                            ngorga@honigman.com

                                            *Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 20, 2025, I electronically filed the foregoing papers with the Clerk of the Court using the court's electronic filing system, which will send notification of such filing to all counsel of record.

/s/ <i>Nick Gorga</i>
Nick Gorga (P72297)

Dated:  February 20, 2025