IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| Dakota Labs Inc., <br><br> Plaintiff, <br><br> v. <br><br> Huron Capital Partners LLC and Michael Grunza III, <br><br> Defendants. | Case No. 2:24-cv-10922 <br><br> Hon. Susan K. DeClercq |

**STIPULATED ORDER REGARDING DISCOVERY OF
<u>ELECTRONICALLY STORED INFORMATION</u>**

Pursuant to Rule 26(b) of the Federal Rules of Civil Procedure and the stipulation of the parties regarding discovery and the preservation, search and production of electronically stored information and hard-copy documents or files stored in or converted into electronic format ("ESI") in this proceeding, **IT IS HEREBY ORDERED** as follows:

I.    **GENERAL**

A.    **Scope:** The procedures and protocols outlined herein (the "ESI Protocol") govern discovery procedures including the preservation, search and production of ESI by the Parties. This Order applies throughout the pendency of this litigation and governs all Parties to these proceedings, whether they currently are involved or become so in the future (collectively, the "Parties"). This ESI Protocol

shall also govern productions made by any third party who is subpoenaed in this action unless otherwise agreed to by the issuing Party and the third party. Accordingly, this ESI Protocol shall be attached to any subpoena issued in this action. The Parties will take reasonable steps to comply with this ESI Protocol.

Nothing in this ESI Protocol is intended to be an exhaustive list of discovery obligations or rights of a Party producing discoverable information or a Party requesting discoverable information, or any other Party or non-party. To the extent additional obligations or rights not addressed in this ESI Protocol arise under the Eastern District of Michigan Local Rules, the Federal Rules of Civil Procedure, or other applicable rules or applicable law, they shall be controlling. This ESI Protocol governs the reproduction by the Parties of discoverable information obtained from non-parties prior to or during discovery; such information shall be reproduced by the Parties in the format defined in this ESI Protocol for all document productions.

**B.     Costs:** Each Party shall bear its own costs for the production of documents in accordance with this protocol unless cost-sharing or cost-shifting with respect to any particular source of responsive documents is appropriate under the law and directed by the presiding court.

**C.     Variance and Dispute Resolution:** Any practice or procedure set forth herein may be varied by agreement of the Parties. Should any Party subsequently determine it cannot in good faith proceed as required by this Protocol, or if the

Parties cannot reach agreement as to the implementations of the Protocol, the Parties will meet and confer to resolve the dispute and if not successful seek assistance from the Court.

    **D.**    **Non-Waiver:** By agreeing to this ESI Protocol, the Parties and their attorneys do not waive, and do not intend to waive: (1) their rights to any protection or privilege, including the attorney-client privilege and work product doctrine; (2) their objections or rights to object to any discovery requests previously served or which may be served in the future; (3) any and all objections to the authenticity, relevance, competency, materiality or admissibility of any ESI that may be produced in this action; or (4) their rights to object on any grounds to the use of any ESI they may produce, including at the trial of this action.

**II.**    **IDENTIFICATION AND COLLECTION OF RESPONSIVE DOCUMENTS**

    **A.**    **Sources and Search Methods:** The Parties agree that, with respect to pending discovery requests and any supplemental requests, they shall meet and confer in good faith regarding: (1) sources from which and custodians from whom ESI will be collected for review; (2) search methods, search terms, and/or other filtering or categorization to be applied; and (3) applicable timeframe(s) for collection and review of ESI.  These discussions should begin as soon as practicable after service of responses and objections to requests for production and shall continue as necessary to address issues that arise in the course of discovery.  If the

Parties cannot reach agreement on the scope of collection and/or review following good-faith negotiations, the Parties will seek resolution from the Court as to any remaining disputes.

B. **Timing:** The production of documents in accordance with this ESI Protocol will be made on a rolling basis and will be substantially completed by September 26, 2025. The Parties will, in good faith, endeavor to phase their review of documents and to produce the responsive, non-privileged documents from such reviews according to the following schedule:

Approximately 33%: on or before July 18, 2025; and

Approximately 66%: on or before August 22, 2025.

C. **Filtering and Culling:** The Parties agree to the following approaches to filtering or culling of ESI:

1. <u>De-Duplication:</u> Each Party may dedupe ESI globally (*i.e.*, across all custodians) for exact duplicate documents (based on MD5 or SHA-1 hash values at the parent document level). This will result in the Producing Party needing to produce only a single copy of responsive Duplicate ESI, provided that all other custodians of the Duplicate ESI are listed in the "Duplicate Custodian" (or similar name) field. The Parties will not treat a document containing handwritten notes, highlighting, or any other markings as a duplicate of a non-marked or

annotated version of the same document. The Parties shall de-duplicate stand-alone documents against stand-alone documents and shall de-duplicate top-level email documents against top-level email documents. De-duplication shall not break apart families.

2. <u>Email Threading:</u> Email threads are email communications that contain prior or lesser-included email communications that also may exist separately in the Party's electronic files. A most inclusive email thread is one that contains all of the prior or lesser-included emails, including attachments, for that branch of the email thread. Each Party may review only the most inclusive email threads; however, all emails in a thread shall be produced. Threading is therefore permitted for document review, though not required. To the extent that an e-mail thread contains privileged communications, such communications can be redacted. Each Party must include each individual email on its privilege log, including lesser-included emails within email threads, over which it seeks to assert a privilege. If an e-mail thread contains responsive, non-privileged communications, the entire e-mail thread cannot be withheld as privileged.

### III.  PRODUCTION OF RESPONSIVE DOCUMENTS

   A.  **Form of Production:**

   a. ESI must be produced as single-page, Group IV TIFFs at 300x 300 dpi resolution and 8.5 x 11-inch page size (size for size), unless a document requires a different resolution or page size in order to be appropriately viewed.

   b. Each imaged version of an electronic document will be created directly from the original electronic document.

   c. Images shall be produced as black & white, single-page TIFF images or color-for-color, single-page JPG images in accordance with the technical specifications set out above, unless agreed with the opposing party or ordered by the Court.  Word documents and PowerPoint files shall be produced natively. Documents produced in color shall be produced as single page, 300 DPI, color JPG images with the quality setting of 75% or higher.

   d. For each document, an extracted text file should be provided along with its corresponding TIFF image file(s) and metadata. The file name of each extracted text file should be identical to that of the first image page of its corresponding document, followed by .txt.  File

names should not contain any special characters or embedded spaces. The text of native files should be extracted directly and should contain the full text from the native file. To the extent reasonably feasible, extracted text shall provide all comments, tracked changes, speaker's notes, and text from hidden worksheets, slides, columns and rows. If a document has been redacted, Optical Character Recognition ("OCR") of the redacted document will suffice in lieu of extracted text. Also, if extracted text is not available in the native file or documents contain redactions, the documents shall be processed by an OCR tool prior to production to extract available text so that the record is searchable to the extent possible.

e. Spreadsheets, presentation formatted files or documents, source code, audio and video files, and other file types that do not readily convert to image format shall be produced in native format. Any document produced in native format should be produced in accordance with the following specifications:

   i. A unique bates number and confidentiality designation shall be used as the file name, and the original file name and file extension shall be preserved in the corresponding load file. An example of this convention would be "XXXXXX0000001_HighlyConfidential.doc."

7

      ii. The native format documents shall be accompanied by reference information in the accompanying metadata DAT file that sets forth for each document sufficient information to allow the parties to track and authenticate the native format documents produced, including: (i) the name of the custodian from whose files the electronic file is produced; (ii) an appropriately calculated "MD-5 Hash Value"; (iii) the original name of the file; and (iv) a Bates number.

      iii. Any file produced in native format need not be imaged. Instead, a single-page placeholder image shall be provided that indicates the file was produced in native format and contains the bates number of the corresponding file.

   f. The Parties shall meet and confer regarding the scope and production format for short messages, including, but not limited to, instant messages and text messages.

**E.** **Document Enhancement and Orientation**: The Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business. Original document orientation should be maintained (*i.e.,* portrait to portrait and landscape to landscape) to the extent practicable.

**F.** **Data Load Files/Cross-Reference Files:** ESI shall be accompanied by a data load file, a single text file containing extracted text or Optical Character Recognition ("OCR") Text when used in lieu of extracted text, and an image load file for each document. Fielded data should be exchanged via a document-level-database load file in standard Concordance format (DAT). All image data should be delivered with a corresponding image load file in Opticon (OPT). The total number

of images files referenced in the image load file should match the total number of images in the production delivery.

  **G.** **Document Unitization:** The Parties shall use best efforts to produce hard-copy documents or files stored in or converted into electronic format so that they are physically unitized to the smallest binding element (*i.e.,* distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records) and produced in the order in which they are kept in the usual course of business.  For documents found in folders or other containers with labels, tabs, or other identifying information, such labels and tabs shall be scanned where practicable.  Pages with Post-it notes shall be scanned both with and without the Post-it, with the image of the page with the Post-it preceding the image of the page without the Post-it.  Documents shall be scanned and produced color-for-color.  For all files produced as TIFF/JPG images, each page of a document shall be electronically saved as an image file.  If a document consists of more than one page, the producing Party will maintain the unitization of the document and any attachments as it existed in the original when creating the image files.

  **H.** **Bates Numbering:** Each production volume shall be given a common designator, and volume names shall be consecutive (e.g., ABC001, ABC002, . . .). All TIFF images must be assigned a Bates number that shall: (i) be unique across the entire document production; (ii) maintain a constant length across the entire

production; (iii) contain no special characters or embedded spaces; (iv) be sequential within a given document; (v) appear in the lower right corner of the page. If a Bates number or set of Bates numbers is skipped in a production, the producing Party will produce a one-page placeholder in the production for any Bates number gaps. Each placeholder shall also contain the appropriate Confidentiality endorsement for the file.

If a document is produced in native format, a single-page Bates stamped image slip sheet stating the document has been produced in native format should be provided. This placeholder shall also contain the appropriate Confidentiality endorsement for the file. Each native file should be named according to the Bates number it has been assigned and should be linked directly to its corresponding record in the load file using the NATIVELINK field.

I. **Fields and Metadata:** The following metadata fields associated with each electronic document will be produced, to the extent they are available. No party shall be required to manually populate any fields that do not exist as a document is maintained in the ordinary course of business.

| Field Name | Field Description | Required For Email | Required For Non-E-Mail ESI | Required for Chats/Texts |
|---|---|---|---|---|
| Custodian | Name of custodian(s) of email(s) or file(s) produced (Last Name, First Name format) as available | X | X | X |
| Duplicate Custodian | Name of duplicate | X | X | X |

| Field Name | Field Description | Required For Email | Required For Non-E-Mail ESI | Required for Chats/Texts |
|---|---|---|---|---|
| (or similar name) | custodian(s) of email(s) or file(s) produced | | | |
| BegBates | Beginning Bates# (including Prefix) | X | X | X |
| EndBates | Ending Bates# (including Prefix) | X | X | X |
| BegAttach | Beginning Bates number of the first document in an attachment range | X | X | X |
| EndAttach | Ending Bates number of the last document in attachment range | X | X | X |
| From | From field extracted from an email message | X | | |
| Author | Author field extracted from the metadata of a non-email document | | X | |
| To | To or Recipient extracted from an email message | X | | |
| Cc | Carbon Copy ("Cc") field extracted from an email message | X | | |
| Bcc | Blind Carbon Copy ("Bcc") field extracted from an email message | X | | |
| EmailSubject | Subject line extracted from an email message | X | | |
| Filename | File name — Original name of file as appeared in original location | | X | |
| Title | Title field extracted from the metadata of a non-email document | | X | |
| DateSent | Sent date of an email message (mm/dd/yyyy format) | X | | X |
| DateRcvd | Received date of an email message (mm/dd/yyyy format) | X | | X |

11

| Field Name | Field Description | Required For Email | Required For Non-E-Mail ESI | Required for Chats/Texts |
|---|---|---|---|---|
| DateCreated | Date that a non-email file was created (mm/dd/yyyy format) | | X | |
| DateLastModified | The application recorded time on which the document was last modified | | X | |
| TimeSent | Time e-mail was sent (hh:mm:ss format) | X | | X |
| TimeRcvd | Time e-mail was received (hh:mm:ss format) | X | | X |
| FileExtension | The file extension for the document | | X | |
| FilePath | File path storage location of the document or email if the source application allows for the creation of folders | X | X | |
| NativeLink | Relative path to any files produced in native format | X | X | X |
| TextLink | Relative path to any OCR/extracted text files in the production set | X | X | X |
| HashValue | MD5 or SHA-1 hash value used to deduplicate the data | X | X | |
| Confidentiality Designation | Confidentiality Designation for produced documents | X | X | X |
| Redaction | Identifies if a document has been redacted | X | X | X |
| Conversation_ID | For Teams and other chat / text data, identifies all messages and family items that belong to the same conversation | | | X |
| ConversationType | For Teams and other | | | X |

12

| Field Name | Field Description | Required For Email | Required For Non-E-Mail ESI | Required for Chats/Texts |
|---|---|---|---|---|
| | chat data, identifies the content type (e.g., 1:1 Chat, Group Chat, Channel Post) | | | |
| Chat_From (sender) | For Teams and other chat / text data, identifies the sender of the message(s) | | | X |
| Chat_To (recipient) | For Teams and other chat / text data, identifies the recipient(s) of the message(s) | | | X |
| Chat_Message Sent Date | For Teams and other chat / text data, identifies the sent date for the message(s) | | | X |
| Chat_AttachFileName | For Teams and other chat / text data, provides the file name for any files attached to the message(s) | | | X |
| Chat_Participant Count | For Teams and other chat / text data, provides the total number of message participants | | | X |

To the extent feasible without undue burden, hard copy documents, if any, shall be produced with at least the following fields:

| Fields | Description |
|---|---|
| BegBates | Beginning Bates# (including Prefix) |
| EndBates | Ending Bates# (including Prefix) |
| BegAttach | Beginning Bates number of the first document in an attachment range |
| EndAttach | Ending Bates number of the last document in attachment range |
| Custodian | Name of custodian(s) of email(s) or file(s) produced (Last Name, First Name format) as available |

13

**J.** **Attachments:** For purposes of this ESI Protocol, attachment means a physical file that is embedded into and/or sent with an email or another electronic message or file. If a parent email or one of its attachments is produced, all members of its family, except for privileged documents, and associated text and metadata, must be produced. Email attachments shall be produced according to the specifications in this Section. Email attachments shall be processed as though they were separate documents, and the load file shall include a field in which the producing Party shall identify, for each email, the Bates range of any attachments. Attachments must be mapped to their parent.

**K.** **Embedded Files:** The Parties agree to meet and confer about the scope and format of production of embedded files (*e.g.*, hyperlinks) that are not logos.

**L.** **Compressed File Types:** Compressed file types (*e.g.,* .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted. The compressed container files are not produced.

**M.** **Decryption of Production Data:** The Parties will make reasonable efforts to ensure that encrypted or password-protected documents and ESI are successfully processed for review and production. To the extent security protection for such documents and ESI cannot be successfully processed despite reasonable efforts, when producing such encrypted files, the producing Party shall produce a placeholder stating that the documents cannot be decrypted and provide fielded data

14

and, where available, metadata, listed in Subsection F above, to the extent it can be reasonably extracted from the file in its encrypted form.

**N. Redactions:** Where redaction of information is required, such redactions must be made in a way that ensures the integrity of the remaining text is preserved for OCR (*e.g.,* redactions must not obscure non-redacted text). Extracted text will *not* be provided for electronic documents that have been redacted—*e.g.*, for privilege—because the extracted text would reveal the redacted information. Instead, these files should be run through an OCR process to capture the visible text only and the results exchanged in lieu of the original extracted text. Any redactions must be clearly visible on the face of the produced document (*e.g.,* the Parties should not use white boxes to make redactions on documents with a white background) and redactions should include the label of "Redacted" which is included in the OCR of the document, to make it searchable. Excluding files that do not render in a readable format to TIFF, such as excel spreadsheets, redacted ESI shall be produced as TIFF/JPG images, accompanied by a load file with fielded data, a .txt file containing the OCR'ed text, and an image load file for the redacted TIFF/JPGs. Documents that do not render in a readable format to TIFF shall be redacted in native form as long as the producing party keeps a pristine, unredacted copy of the native file and identifies the natively redacted files by way of the redaction metadata field. Native Excel or other spreadsheet files may be redacted by overwriting the data contained

15

in a particular cell, row, column or tab so as to make clear the reason for the redaction (*e.g.*, "Redacted for Privilege"). Privileged field data can be redacted with the word "Redacted for Privilege" replacing the withheld metadata. All metadata that is not privileged will be produced. The Parties will meet and confer to discuss a suitable production format for any document types not addressed in this ESI Protocol, as necessary.

### IV. PRIVILEGE

A. **Privilege Logs:** Each Party shall produce a privilege log within thirty (30) days following the production of ESI to which that privilege log relates. The Parties will meet and confer concerning the nature and scope of privilege logs for this action, including, but not limited to, any categories of documents or information that may be excluded from the Parties' privilege logs, the information to be included in the privilege logs, and the responsibility and procedure for logging documents over which there is a claim of privilege by a Party other than the producing Party.

**IT IS SO ORDERED.**

Dated: June 23, 2025                    /s/Susan K. DeClercq
                                        Hon. Susan K. DeClercq
                                        U.S. District Court Judge

**SO STIPULATED:**

                **WINSTON & STRAWN LLP**

Date: June 18, 2025        By: */s/ Ronald Y. Rothstein*
                                    Ronald Y. Rothstein
                                    rrothste@winston.com
                                    Kent Z. Steinberg
                                    ksteinberg@winston.com
                                    John R. McNair (P86720)
                                    jmcnair@winston.com
                                    35 West Wacker Drive
                                    Chicago, IL 60601
                                    Telephone: (312) 558-5600
                                    Facsimile: (312) 558-5700

                                    *Attorneys for Plaintiff Dakota Labs, Inc.*

                **HONIGMAN LLP**

                By: */s/ Nick Gorga*
                Nick Gorga (P72297)
                Shannon C. Duggan (P83211)
                Jalen R. Farmer (P86859)
                600 Woodward Avenue
                Detroit, MI 48226
                Tel: (313) 465-7640
                ngorga@honigman.com

                *Attorneys for Defendants*